# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| Charles Johnson, § § Plaintiff, § § v. § § Verizon CMP Holdings, LLC, § HuffPost.com, Inc., and Andy § Campbell, § § Defendants. § | CIVIL ACTION NO. 4:20-cv-00179 |

**<u>DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)</u>**

Defendants TheHuffingtonPost.com, Inc.[1] ("HuffPost") and Andy Campbell (together, the "HuffPost Defendants") hereby move to dismiss Plaintiff Charles Johnson's Complaint against them under Federal Rule of Civil Procedure 12(b)(2).

---

[1] Defendant TheHuffingtonPost.com, Inc. was erroneously sued as HuffPost.com, Inc. On March 6, 2020, the Court granted the voluntary dismissal of Defendant Verizon CMP Holdings, LLC. (Doc. 16.)

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................ 1
II. FACTS ................................................................................................................................ 2
III. ARGUMENT AND AUTHORITIES ................................................................................ 3
    A. Legal Standard ........................................................................................................ 3
    B. No General Jurisdiction Exists Over the HuffPost Defendants in Texas. .............. 4
    C. No Specific Jurisdiction Exists Over the HuffPost Defendants in Texas. ............. 7
IV. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aviles v. Kunkle*,
  978 F.2d 201 (5th Cir. 1992) ................................................................................................4

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ..............................................................................................................4

*Busch v. Viacom International, Inc.*,
  477 F. Supp. 2d 764 (N.D. Tex. 2007) ...............................................................................8, 9

*Calder v. Jones*,
  465 U.S. 783 (1984) ..............................................................................................................8

*Clemens v. McNamee*,
  615 F.3d 374 (5th Cir. 2010) ........................................................................1, 4, 7, 8, 9, 10

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ...........................................................................................................5, 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915, 924 (2011) ....................................................................................................4, 5

*Hanson v. Denckla*,
  357 U.S. 235 (1958) ..............................................................................................................3

*Head v. Las Vegas Sands, LLC*,
  298 F. Supp. 3d 963, 969 (S.D. Tex. 2018) ..........................................................................4

*Helicopteros Nacionales de Columbia v. Hall*,
  466 U.S. 408 (1984) .....................................................................................................4, 5, 6

*Herman v. Cataphora*,
  730 F.3d 460 (5th Cir. 2013) ...........................................................................................9, 10

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ..............................................................................................................4

*Orhii v. Omoyele*,
  No. 4:08-CV-3557, 2009 WL 926993 (S.D. Tex. Mar. 31, 2009) .........................................9

*Revell v. Lidov*,
  317 F.3d 467 (5th Cir. 2002) .......................................................................................5, 6, 8, 9

*Wakefield v. British Med. Jrnl. Publ'g Grp., Ltd.*,
  449 S.W.3d 172 (Tex. App.-Austin 2014, no pet.) ..............................................................10

*Wilson v. Belin*,
  20 F.3d 644 (5th Cir. 1994) ..................................................................................................4

**I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT**

The HuffPost Defendants are not subject to either general or specific personal jurisdiction in this action. Neither of the HuffPost Defendants is a resident of Texas. HuffPost and Campbell's respective contacts with Texas are insufficient to subject either of them to general jurisdiction in Texas on any plausible allegation. Nor could either of the HuffPost Defendants be subjected to specific jurisdiction in this action. Plaintiff's defamation claim is based on an article by the HuffPost Defendants about a meeting that took place in Washington, D.C. (the "Article"). Texas is not the focal point of the Article. Indeed, Texas is not even mentioned in it. The Article did not target Texas specifically, nor was Texas its primary audience. The HuffPost Defendants did not contact or rely on sources in Texas in preparing the Article. Moreover, the author of the Article was unaware that Plaintiff resided in Texas at the time the Article was published. Courts have held that in such a scenario, an allegedly defamatory statement about a Texas resident cannot give rise to specific personal jurisdiction.

Indeed, the Fifth Circuit has held that the mere presence of a defamation plaintiff in Texas does not confer personal jurisdiction over an out-of-state defendant—even where the defendant knew that the plaintiff lived in Texas and would feel the brunt of the alleged injury in this State. *See Clemens v. McNamee*, 615 F.3d 374, 376 (5th Cir. 2010) (dismissing for lack of personal jurisdiction where article at issue discussed activities in New York and Canada, and the attempted jurisdictional nexus to Texas was the plaintiff's allegation that the harm was felt in the state).

The imposition of personal jurisdiction over the HuffPost Defendants would be unconstitutional and would offend traditional notions of fair play and substantial justice. Because no plausible allegations could suffice to show personal jurisdiction over either of the HuffPost Defendants, this Court should dismiss Plaintiff's Complaint with prejudice and without leave to amend.

**II.    FACTS**

The HuffPost Defendants' Article reported on a controversial meeting that took place on January 15, 2019, in Washington, D.C., between Plaintiff and Republican Representatives Andy Harris of Maryland and Phil Roe of Tennessee. Compl. ¶¶ 7-8 (Doc. 1); Declaration of Andy Campbell ("Campbell Decl."), Ex. A. The Complaint links to the Article, which reports that the meeting took place to discuss "DNA sequencing" and that Plaintiff, Rep. Harris, and Rep. Roe were seen together at the United States Capitol Building in Washington, D.C. *See id.* The Article makes no mention of Plaintiff's Texas residence, nor does it reference any events taking place in Texas or have any other substantive connection to Texas. *See generally id.*

The Complaint alleges that TheHuffingtonPost.com, Inc., is a Delaware corporation with its principal place of business in New York. *Id.* ¶ 3. It further alleges that Defendant Andy Campbell is a natural person domiciled in New York. *Id.* ¶ 4. Plaintiff claims that he resided in Texas at the time of the events giving rise to his allegations and, without support, that "the tort complained of herein was committed in whole or in part in Texas." *Id.* ¶ 6. The Complaint also makes unsupported assertions that HuffPost "has systematic and continuing contacts with Texas by procuring subscriptions to its publication in Texas and delivering said subscriptions in Texas." *Id.* Even if Plaintiff's allegation were an accurate description of HuffPost's activities, which the HuffPost Defendants dispute, this allegation is insufficient to meet the minimum contacts requirement for the exercise of personal jurisdiction. Plaintiff makes no allegations about Defendant Andy Campbell's contacts with Texas. *See generally* Compl. ¶¶ 4-6.

The HuffPost Defendants are not, and have never been, domiciled in Texas. *See* Declaration of Victor Brand ("Brand Decl.") ¶¶ 2-3. HuffPost does not maintain an office in Texas, does not own property in Texas, and does not have any Texas employees. *Id.* Relevant to this case, HuffPost did not directly distribute the Article at issue to any Texas addresses. *Id.* ¶ 4.

2

Rather, the Article was posted to HuffPost's publicly-available website. *Id.* The Article did not attract a disproportionate number of Texas readers; only about 8% of the page views for the Article are from Texas visitors to HuffPost's website. *Id.* ¶ 5.

Andy Campbell is not employed in Texas, does not maintain a residence or own or lease any real or personal property in Texas, and does not regularly transact business in Texas. Campbell Decl. ¶¶ 2-3. He does not have any assets or any type of bank or other account in Texas. *Id.* ¶ 3. Campbell does not maintain an office in Texas, does not have any employees in Texas, has never had a Texas professional license, and does not regularly travel to Texas for business. *Id.* ¶¶ 3-4. Campbell also made no contact with Texas in researching or reporting for the Article. *Id.* ¶ 6. Campbell did not visit Texas, nor did he make any phone calls to Texas residents, or conduct any interviews or research in Texas in connection with the Article. *Id.* At the time of the Article's publication, Campbell was unaware of Johnson's Texas domicile. *Id.* ¶ 7.

## III.   ARGUMENT AND AUTHORITIES

HuffPost and Andy Campbell are domiciled in Delaware and New York, as alleged in Plaintiff's Complaint. Compl. ¶¶ 3-4. Because they are out-of-state Defendants, no personal jurisdiction exists over them unless Plaintiff can show the HuffPost Defendants purposefully availed themselves of the privilege of conducting activities within the forum state and thus invoked the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

### A.   Legal Standard

Where, as here, nonresident defendants file a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden to prove the existence of personal jurisdiction over the defendants. *Wilson v. Belin*, 20 F.3d 644, 649 (5th Cir. 1994); *Head v. Las Vegas Sands, LLC*, 298 F. Supp. 3d 963, 969 (S.D. Tex. 2018). Plaintiff cannot show that the HuffPost Defendants have the requisite "minimum contacts" with Texas necessary to allow the exercise of personal

jurisdiction without "offend[ing] traditional notions of fair play and substantial justice[,]" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), and he therefore cannot carry his burden.

In deciding whether a plaintiff has shown that a court can exercise personal jurisdiction over a defendant, the court will determine whether either general jurisdiction or specific jurisdiction exists. *Las Vegas Sands*, 298 F. Supp. 3d at 970. General jurisdiction requires the plaintiff to show that the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408 (1984); *Wilson*, 20 F.3d at 647. Specific jurisdiction requires that a plaintiff show the defendant has "purposefully directed" its activities relevant to the lawsuit at the forum state and the litigation must result from alleged injuries that "arise out of or relate to" the defendant's activities *directed at* the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992). In a defamation case, courts will not find specific jurisdiction where the challenged statements "lack any connection with the forum state." *Clemens*, 615 F.3d at 376. An allegation that the plaintiff's harm was suffered in the forum state will not suffice to show such a connection. *Id.*

### B. No General Jurisdiction Exists Over the HuffPost Defendants in Texas.

To support a finding of general jurisdiction, a defendant must have *substantial contacts* with the forum state, such that it can be fairly regarded as "at home" in that state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see also Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) ("substantial, continuous and systematic contacts [are] required for a finding of general jurisdiction"). The United States Supreme Court has held that only in an "exceptional" case would a corporation be properly regarded as "at home" in a state other than its place of incorporation or principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 139

4

n.19 (2014). The HuffPost Defendants do not meet this "exceptional" level of contact with Texas and cannot be subject to general jurisdiction in Texas.

Courts narrowly construe what it means to be "at home" in a state. In *Helicopteros*, 466 U.S. at 416, the United States Supreme Court held that the defendant was not subject to general jurisdiction in Texas where it sent its CEO to Texas to negotiate a contract, accepted checks into its bank account from a Texas-based bank, spent "substantial sums" in Texas purchasing helicopters, equipment, and training services, and sent personnel to Texas for training. The Supreme Court also held that the circuit court erred in exercising personal jurisdiction over the defendant in *Daimler*, 571 U.S. at 136, despite "multiple . . . facilities" in the forum state, California. And even though the defendant's subsidiary was the largest supplier of luxury vehicles to the California market, the defendant was still not "essentially at home" there. *Id.* at 139. The Supreme Court has thus confirmed that a high number of contacts with a forum state alone cannot suffice to confer general jurisdiction over a defendant. *See id.* Rather, the defendant's contacts with a forum state must be on par with those of its domicile, or its *principal* place of business— not just a place of significant business. *Id.*

The HuffPost Defendants' alleged Texas-based activities are nowhere close to the activities of the defendants not subject to general jurisdiction in *Helicopteros*, and *Daimler*. Plaintiff's only statement purportedly alleging that the HuffPost Defendants are subject to general jurisdiction is that HuffPost "has systematic and continuing contacts with Texas by procuring subscriptions to its publication in Texas and delivering said subscriptions in Texas." Compl. ¶ 6. Even accepting this allegation as true for purposes of a motion to dismiss, procuring and delivering subscriptions does not come close to being "at home" in Texas. Additionally, the fact that HuffPost's website is accessible in Texas does not support the exercise of general jurisdiction. *See Revell*, 317 F.3d at

5

471 (dismissing defamation case for lack of personal jurisdiction and explaining that while "the maintenance of a website is, in a sense, a continuous presence everywhere in the world," this kind of contact "is not in any way 'substantial.'").

HuffPost's contacts with Texas are far too limited for the exercise of general jurisdiction to ever be appropriate. For example, the defendant in *Helicopteros* sent personnel to Texas, spent millions of dollars in Texas related to their businesses, and contracted with Texas-based companies. In *Daimler*, the defendant's subsidiary was the largest supplier of a class of goods to the forum state and had multiple facilities there, and it still was not subject to general jurisdiction. *See* 571 U.S. at 139. Here, Plaintiff simply alleges that HuffPost has Texas-based subscribers. Compl. ¶ 6. Moreover, HuffPost maintains no offices in Texas and cannot reasonably expect to be haled into court in the state. *See* Brand Decl. ¶¶ 2-3. As Plaintiff alleges, HuffPost is incorporated in Delaware and has its principal place of business in New York. Compl. ¶ 3. Unlike *Daimler*, where the defendant maintained facilities in the forum state, here, the HuffPost Defendants have none. *See* 571 U.S. at 139; Brand Decl. ¶¶ 2-3. HuffPost is also not the lead importer of a class of goods to Texas, the way the defendant in *Daimler* was to the forum state. 571 U.S. at 139; Brand Decl. ¶ 3. And, differently from *Helicopteros*, where the defendant invested heavily in Texas and sent personnel to Texas, HuffPost does not regularly send employees to Texas and has not procured equipment and training in Texas. *See* Brand Decl. ¶ 3.

Plaintiff's allegations are plainly insufficient to subject HuffPost to general jurisdiction in Texas. Plaintiff makes no allegations about Defendant Andy Campbell's contacts with Texas at all, *see generally* Compl. ¶¶4-6, and Campbell therefore necessarily cannot be subject to general jurisdiction based on Plaintiff's allegations. Because Campbell is not employed in Texas, does not maintain a residence or own or lease any real or personal property in Texas, does not regularly

6

transact business in the forum, does not have a Texas bank account, has never had a Texas professional license, and does not regularly travel to Texas, Plaintiff *cannot* plausibly allege facts sufficient to confer general jurisdiction on Campbell. Campbell Decl. ¶¶ 2-4.

### C. No Specific Jurisdiction Exists Over the HuffPost Defendants in Texas.

The HuffPost Defendants also did not avail themselves of the Texas market in researching, writing, or publishing the Article giving rise to Plaintiff's claims. Therefore, they cannot be subject to specific jurisdiction in Texas.

The Fifth Circuit definitively foreclosed the exercise of personal jurisdiction based on a plaintiff's residence in *Clemens*, where the "content and context" of the allegedly defamatory statements "lack[ed] any connection with the forum state." 615 F.3d at 376. The statements at issue in *Clemens* claimed that a professional baseball player had used performance-enhancing drugs in New York and Toronto. *Id.* at 377. The plaintiff's attempt to point to the harm he suffered in Texas as a jurisdictional nexus failed. *Id.* at 380. The court explained that the plaintiff "has not made a prima facie showing that [defendant] made statements in which Texas was the focal point: the statements did not concern activity in Texas; nor were they made in Texas or directed to Texas residents any more than residents of any state." *Id.*

Here, Plaintiff attempts to establish specific jurisdiction by alleging, with only conclusory support, that "the tort complained of herein was committed in whole or in part in Texas." Compl. ¶ 6. Plaintiff appears to base this contention solely on the fact that he is a Texas resident. *See id.* But Plaintiff's allegations here carry no weight, as cases like *Clemens* have rejected the argument that a plaintiff's place of citizenship in the forum state provides a basis for the exercise of specific jurisdiction.

Other case law on point supports this view. In *Revell*, the Fifth Circuit found insufficient minimum contacts with Texas where an out-of-state college professor published an online article

about a government official based in Texas. 317 F.3d at 469. The professor was "apparently unaware that [the defendant] then resided in Texas," and the focal point of his story was not based around Texas but instead discussed the terrorist bombing of a Pan Am flight which exploded over Scotland. *Id. Revell* distinguished *Calder v. Jones*, 465 U.S. 783 (1984), where the Supreme Court found specific jurisdiction. *Revell* noted that the exercise of jurisdiction by a California court in *Calder* was appropriate because the material at issue contained descriptions of the California activities of the plaintiff, consulted California sources, and found its largest audience in California. *Id.* at 473. Conversely, the *Revell* article did not use Texas sources, focus on Texas activities, or find its largest audience in Texas. *Id.* The author was not even aware that the plaintiff lived in Texas at the time of publication. *Id.* at 469.

Like the defendant in *Revell*, the broadcaster in *Busch v. Viacom International, Inc.*, did not know that the plaintiff lived in Texas at the time the allegedly defamatory broadcast aired. 477 F. Supp. 2d 764, 772-773 (N.D. Tex. 2007). Based on this and the lack of a Texas focal point in the challenged broadcast, the court in *Busch* "ha[d] been presented with no facts from which it could conclude that [defendant] aimed his conduct at Texas with regard to the challenged broadcast." The fact that the plaintiff happened to live in Texas—unbeknownst to the broadcaster—was insufficient to establish personal jurisdiction. *Id.*

Similarly, the Southern District of Texas refused to exercise personal jurisdiction over the defendant in *Orhii v. Omoyele*, where the article at issue only incidentally referred to the plaintiff's residence and work in Texas. No. 4:08-CV-3557, 2009 WL 926993, at *4 (S.D. Tex. Mar. 31, 2009). The larger focus of the story was about Nigeria and its public officials, and accordingly the plaintiff failed to show that the focal point of the article was Texas. *Id.*

8

In *Herman v. Cataphora*, the Fifth Circuit held that merely making an article accessible online in the forum is insufficient to give rise to specific jurisdiction based on that article. 730 F.3d 460, 465 (5th Cir. 2013). The court clarified that "[e]ven if the majority of the claimed harm is felt in the forum state, this court has declined to find personal jurisdiction when the statements focus on activities and events outside the forum state." *Id.* Therefore, a plaintiff's Texas residence alone cannot create personal jurisdiction over a defendant whose statements at issue did not have Texas as the focal point.

Plaintiff's allegations here line up precisely with those that were rejected in *Clemens*, *Revell*, *Busch*, *Orhii*, and *Herman*. As in *Revell* and *Busch*, here, the author of the Article—Defendant Campbell—was not even aware that Plaintiff was a Texas resident when they wrote and published the Article. *See Revell*, 317 F.3d at 469; *Busch*, 477 F. Supp. 2d at 772-773; Campbell Decl. ¶ 7. The focus of the Article was on a meeting Plaintiff attended with elected representatives in Washington, D.C. Campbell Decl. ¶ 5; Ex. 1. Likewise, in *Orhii*, the focus of the story at issue was Nigerian public officials, despite the plaintiff residing in Texas. 2009 WL 926993, at *4. And in *Clemens*, the activities referenced in the allegedly defamatory statements took place in New York and Toronto. 615 F.3d at 377. The Article does not mention Texas or the fact that Plaintiff resides in the state; did not consult any Texas sources; and does not make Texas its focal point. Campbell Decl. ¶¶ 5-6; Ex. 1; *see Clemens*, 615 F.3d at 380 (requiring the plaintiff seeking to assert specific personal jurisdiction over a defendant in a defamation case to show "(1) the subject matter of and (2) the sources relied upon for the article were in the forum state." (citations omitted); *Wakefield v. British Med. Jrnl. Publ'g Grp., Ltd.*, 449 S.W.3d 172, 187 (Tex. App.—Austin 2014, no pet.) (online availability of website article insufficient to support specific jurisdiction over nonresident reporter and publisher in defamation case). The fact that readers can

9

access the Article in Texas is of no consequence; as the court held in *Herman*, an online article's virtual presence in the forum state is insufficient for the exercise of personal jurisdiction even when coupled with the allegation that plaintiff's harm is felt in that state. 730 F.3d at 465. Plaintiff's conclusory allegation here that he is a Texas resident and "the tort complained of herein was [therefore] committed in whole or in part in Texas" does not meet his burden of showing the existence of specific personal jurisdiction over either of the HuffPost Defendants. *See* Compl. ¶ 6. This is just like the plaintiffs' allegations in *Clemens*, 615 F.3d at 380, and *Herman*, 730 F.3d at 465, that the alleged harm was felt in Texas even though the focus of the alleged defamatory statements was not Texas. The courts in *Clemens* and *Herman* rejected this argued jurisdictional nexus and dismissed the complaints for lack of personal jurisdiction. Based on Plaintiff's allegations, the Court should do the same here.

## IV. CONCLUSION

For these reasons, Plaintiff has failed to show that this Court can exercise personal jurisdiction over the HuffPost Defendants. The HuffPost Defendants respectfully request that the Court dismiss Plaintiff's Complaint for lack of personal jurisdiction, and because there are no plausible allegations on which Plaintiff could make the required showing for the exercise of personal jurisdiction, the dismissal should be with prejudice and without leave to amend.

DATED: March 19, 2020

Respectfully submitted,

/s/ *Jean-Paul Jassy*
Jean-Paul Jassy (Admitted *Pro Hac Vice*)
William T. Um (Admitted *Pro Hac Vice*)
Elizabeth Baldridge (Admitted *Pro Hac Vice*)
JASSY VICK CAROLAN LLP
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
jpjassy@jassyvick.com

wum@jassyvick.com
ebaldridge@jassyvick.com

Patrick W. Mizell
ATTORNEY IN CHARGE
Texas Bar No. 14233980
Federal ID No. 36390
VINSON & ELKINS L.L.P.
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone: (713) 758.3882
Facsimile: (713) 615.5493
pmizell@velaw.com

Marc A. Fuller
Texas Bar No. 24032210
Federal ID No. 2035080
Megan M. Coker
Texas Bar No. 24087323
Federal ID No. 178550
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Telephone: (214) 220-7700
mfuller@velaw.com
megancoker@velaw.com

*Attorneys for Defendants TheHuffingtonPost.com, Inc. and Andy Campbell*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 19, 2020, copy of the above and foregoing has been filed electronically with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                */s/ Marc Fuller*
                                                Marc Fuller