**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Charles Johnson, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-cv-00179 |
| | § | |
| Verizon CMP Holdings, LLC, | § | |
| HuffPost.com, Inc., and Andy | § | |
| Campbell, | § | |
| | § | |
| Defendants. | § | |

**<u>DEFENDANTS THEHUFFINGTONPOST.COM, INC. AND ANDY CAMPBELL'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER RULE 12(b)(6)</u>**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................ 1

II.  FACTUAL BACKGROUND ........................................................................ 2

    A.  Plaintiff Charles Johnson Is An Unabashed, Public-Facing, Far-Right Political Activist.................................................................................... 2

    B.  The HuffPost Article Describes, in Relevant Context, Plaintiff's Meeting with Lawmakers to Discuss DNA Sequencing. ...................................... 4

III.  APPLICABLE LEGAL STANDARDS ............................................................ 6

IV.  THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM OF LIBEL. .............................................................................. 8

    A.  Plaintiff's Complaint Attributes Statements to the HuffPost Defendants that Do Not Appear in the Article. .......................................................... 8

    B.  The Article Conveys Constitutionally-Protected Opinions. ................................... 8

    C.  The Article Is Protected Under Texas Civil Practice & Remedies Code Section 73.005.................................................................................... 12

    D.  Plaintiff is a Public Figure Who Must Adequately Plead Actual Malice, Which He Failed to Do. ........................................................................ 15

        1.  Plaintiff Is, at a Minimum, a Limited-Purpose Public Figure.................. 15

        2.  Plaintiff Fails to Plausibly Allege Actual Malice. ................................. 17

V.  PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO AMEND BECAUSE AMENDMENT WOULD BE FUTILE............................................................ 19

VI.  CONCLUSION.................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Adelson v. Harris*,
  133 Nev. 512 (Nev. 2017) ................................................. 13

*Arpaio v. Zucker*,
  414 F. Supp. 3d 844 (D.D.C. 2019) ................................................. 19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................. 5, 13, 17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................. 5, 6, 13, 17

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015) ................................................. 17

*Biro v. Conde Nast*,
  963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013) ................................................. 7

*Brady v. Klentzman*,
  515 S.W.3d 878 (Tex. 2017) ................................................. 13

*Brewer v. Capital Cities/ABC, Inc.*,
  986 S.W.2d 636 (Tex. App.—Fort Worth 1998, no pet.) ................................................. 8, 12

*Brueggemeyer v. Am. Broadcasting Co.*,
  684 F. Supp. 452 (N.D. Tex. 1988) ................................................. 16

*Buckley v. Littell*,
  539 F.2d 882 (2d Cir. 1976) ................................................. 10

*Charles v. Texas Lottery Comm'n*,
  No. A-06-CA-158, 2006 WL 3358420 (W.D. Tex., Nov. 17, 2006) ................................................. 13

*Chevalier v. Animal Rehab. Ctr., Inc.*,
  839 F. Supp. 1224 (N.D. Tex. 1993) ................................................. 16

*Cochran v. NYP Holdings, Inc.*,
  58 F. Supp. 2d 1113 (C.D. Cal. 1998) ................................................. 7

*Collins v. WAFB, LLC*,
  No. 16-15648, 2017 WL 1383948 (E.D. La. Apr. 18, 2017) ................................................. 15

*Condit v. Dunne*,
  317 F. Supp. 2d 344 (S.D.N.Y. 2004) ................................................. 6, 7

*Covino v. Hagemann*,
  627 N.Y.S.2d 894 (1995) ................................................. 11

*Cox Media Grp., LLC v. Joselevitz*,
  524 S.W.3d 850 (Tex. App.—Houston [14th Dist.] 2017) ................................................. 7

*Dallas Morning News, Inc. v. Hall*,
  579 S.W.3d 370 (Tex. 2019) ................................................. 13, 14

*Deripaska v. Associated Press*,
  282 F. Supp. 3d 133 (D.D.C. 2017) ................................................................ 15, 19

*Edwards v. Detroit News, Inc.*,
  910 N.W.2d 394 (Mich. App. 2017) ...................................................................... 11

*Edwards v. National Audubon Society*,
  556 F.2d 113 (2d Cir. 1977) ................................................................................. 12

*Egiazaryan v. Zalmayev*,
  880 F. Supp. 2d 494 (S.D.N.Y. 2012) ................................................................. 11

*Egiazaryan v. Zalmayev*,
  No. 11-Civ. 2670 (PKC), 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) ................ 18

*Einhorn v. LaChance*,
  823 S.W.2d 405 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.) ............ 9

*El Paso Times Co. v. Kerr*,
  706 S.W.2d 797 (Tex. App.—El Paso 1986, writ ref'd n.r.e.) ............................ 9, 10

*Fairbanks v. Roller*,
  314 F. Supp. 3d 85 (D.D.C. 2018) ....................................................................... 19

*Ferguson v. Bank of N.Y. Mellon Corp.*,
  802 F.3d 777 (5th Cir. 2015) ....................................................................... 2, 6, 7

*Forte v. Jones*,
  No. 1:11-cv-0718, 2013 WL 1164929 (E.D. Cal. Mar. 20, 2013) ......................... 11

*Ganino v. Citizens Utilities Co.*,
  228 F.3d 158 (2d Cir. 2000) ................................................................................... 6

*Garrard v. Charleston Cnty. School District*, --- S.E.2d ---,
  2019 WL 5778086 (Ct. App. S.C., Nov. 6. 2019) ................................................ 11

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) .............................................................................................. 15

*Greenbelt Publ. Ass'n v. Bresler*,
  398 U.S. 6 (1970) .................................................................................................... 8

*Grotti v. Belo Corp.*,
  188 S.W.3d 768 (Tex. App. 2006) ........................................................................ 12

*Harvest House Publishers v. The Local Church*,
  190 S.W.3d 204 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ............... 9, 10

*Hourani v. Psybersolutions LLC*,
  164 F. Supp. 3d 128 (D.D.C. 2016) ..................................................................... 19

*Huckabee v. Time Warner Entm't Co.*,
  19 S.W.3d 413 (Tex. 2000) ................................................................................... 18

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988) .................................................................................................. 8

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*,
   912 F.3d 759 (5th Cir. 2019) ................................................................... 6

*Jankovic v. Int'l Crisis Grp.*,
   822 F.3d 576 (D.C. Cir. 2016) .................................................................. 17

*Jones v. Compass Bancshares, Inc.*,
   339 Fed. Appx. 410 (5th Cir. 2009) ..................................................... 9, 10

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
   856 F.3d 106 (D.C. Cir. 2017) .................................................................. 6

*Leichty v. Bethel College*,
   No. 19-1064, 2019 WL 5549167 (D. Kan., Oct. 28, 2019) .................... 11

*Lovelace v. Software Spectrum, Inc.*,
   78 F.3d 1015 (5th Cir. 1996) .................................................................... 6

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
   674 F.3d 369 (4th Cir. 2012) .................................................................. 17

*McIlvain v. Jacobs*,
   794 S.W.2d 14 (Tex. 1990) ..................................................................... 12

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) ........................................................... 6, 17

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) ..................................................................................... 8

*Mohamed v. Center for Security Policy*,
   554 S.W.3d 767 (Tex. App.—Dallas, 2018, pet. denied) ....................... 16

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*,
   512 F.3d 137 (5th Cir. 2007) .................................................................... 6

*Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*,
   --- F.3d ---, 2020 WL 1056854(8th Cir. Mar. 5, 2020) ....................... 17

*New Times, Inc. v. Isaacks*,
   146 S.W.3d 144 (Tex. 2004) ................................................................... 18

*Norris v. Hearst Tr.*,
   500 F.3d 454 (5th Cir. 2007) .................................................................... 6

*Parisi v. Sinclair*,
   845 F. Supp. 2d 215 (D.D.C. 2012) ........................................................ 19

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995) .................................................................. 19

*Peter Scalamandre & Sons, Inc. v. Kaufman*,
   113 F.3d 556 (5th Cir. 1997) ........................................................ 8, 16, 18

*Price v. Viking Penguin, Inc.*,
   881 F.2d 1426 (8th Cir. 1989) ................................................................ 13

*Raible v. Newsweek, Inc.*,
   341 F. Supp. 804 (W.D. Pa. 1972) ........................................................................ 10

*Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Southeast Fire Dep't*,
   178 F. Supp. 3d 118 (S.D.N.Y. 2016) .................................................................. 11

*Rosanova v. Playboy Ents., Inc.*,
   580 F.2d 859 (5th Cir. 1978) ............................................................................... 16

*Russell v. Davies*,
   948 N.Y.S.2d 394 (2012) ...................................................................................... 10

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012) ............................................................................ 17, 18

*Snyder v. Phelps*,
   562 U.S. 443 (2011) .............................................................................................. 13

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) .............................................................................................. 17

*Trotter v. Jack Anderson Enters., Inc.*,
   818 F.2d 431 (5th Cir. 1987) .......................................................................... 15, 16

*Trout Point Lodge, Ltd. v. Handshoe*,
   729 F.3d 481 (5th Cir. 2013) ................................................................................. 7

*Walker v. Beaumont Independent School District*,
   938 F.3d 724 (5th Cir. 2019) ............................................................................... 14

*Waring v. William Morrow & Co., Inc.*,
   821 F. Supp. 1188 (S.D. Tex. 1993) .................................................................... 19

*WFAA-TV, Inc. v. McLemore*,
   978 S.W.2d 568 (Tex. 1998) ................................................................................ 16

*Willis v. Roche Biomedical Labs., Inc.*,
   61 F.3d 313 (5th Cir. 1995) ................................................................................. 18

**Statutes**

Acts 2015, 84th Leg., ch. 191 (S.B. 627), § 1, eff. May 28, 2015 ............................ 12

Tex. Civ. Prac. & Rem. Code § 73.005 ................................................................. 1, 13

Tex. Civ. Prac. & Rem. Code § 73.005(b) ..................................................... 12, 13, 14

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................... passim

**Other Authorities**

*The Advocate*, "Op-ed: The Amtrak Accident Isn't Part of the Gay Agenda," May 15, 2015,
   available at https://www.advocate.com/commentary/2015/05/15/op-ed-amtrak-accident-isnt-
   part-gay-agenda ...................................................................................................... 3

"Chuck C. Johnson's Epic Drunken Racist Meltdown," May 1, 2015, available at http://littlegreenfootballs.com/article/44577_Chuck_C._Johnsons_Epic_Drunken_Racist_Melt down .............................................................................................................................. 3

*Mother Jones*, "The Rise and Fall of Twitter's Most Infamous Right-Wing Troll," December 16, 2014, available at https://www.motherjones.com/politics/2014/12/charles-chuck-johnson-gotnews-rolling-stone/ ................................................................................................ 3

Subject to and without waiving their motion to dismiss for lack of personal jurisdiction, Defendants TheHuffingtonPost.com, Inc. ("HuffPost") (erroneously sued as "HuffPost.com") and Andy Campbell ("Campbell") (collectively, the "HuffPost Defendants")[1] move to dismiss Plaintiff Charles Johnson's ("Plaintiff's") claims against them under Federal Rule of Civil Procedure 12(b)(6), and state as follows:

## I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff Charles Johnson is notorious for making racially offensive, anti-Semitic, and homophobic statements online and in other media.  He has publicly denied that six million Jews perished in the Holocaust.  He has said that the gas chambers at Auschwitz are "not real."  He questioned whether an Amtrak engineer's sexuality was responsible for a deadly crash, claiming that "[g]ays have a higher rate of mental illness than do straights."  And he stated that it is "obvious" that African-Americans are probably "dumber" than whites.  In addition, Plaintiff does not deny, as the HuffPost article at issue reports, that he "crowdfund[s] . . . for white supremacists and Neo-Nazis" or that Twitter banned him for life for making threats against a Black Lives Matter activist.  His Complaint also does not dispute reports of his previously expressed views that racial and ethnic stereotypes are "largely true," that Jewish people are "neurotic," or his statement that "anti-racist is anti-white."

But despite all this, in his Complaint, Plaintiff takes issue with any suggestion that he is a white supremacist, anti-Semitic, a white nationalist, or a Holocaust denier.  Aside from the fact that the article at issue does not actually contain some of what Plaintiff complains of, this class of terms constitutes nonactionable opinion protected under the First Amendment.  Moreover, the

---

[1] The Court granted Plaintiff's voluntary dismissal of Defendant Verizon CMP Holdings, LLC on March 6, 2020 (ECF No. 16).

article at issue is an accurate reporting of reputable third parties' reports about Plaintiff's involvement with alt-right, racially-charged causes, which is protected under Texas Civil Practice & Remedies Code section 73.005.  Completely independent of these various privileges and defenses, Plaintiff's claim fails as a matter of law because he is a public figure, and he fails to plausibly plead actual malice.

Plaintiff's Complaint presents numerous uncurable defects, and should be dismissed without leave to amend.

## II.  FACTUAL BACKGROUND

### A.  Plaintiff Charles Johnson Is An Unabashed, Public-Facing, Far-Right Political Activist.

Plaintiff Charles Johnson is a far-right political activist who regularly engages with the media to disseminate his offensive views on race, culture, and politics.  Compl. ¶ 6 (Plaintiff alleges that he is "undeniably involved with conservative political causes"); Declaration of Elizabeth Baldridge ("Baldridge Decl."), Ex. 3[2] (describing Johnson as a former *Breitbart News* writer who, among other things, has stated his political views through radio broadcast and social media).[3]  In particular, Plaintiff has made his views on race-related issues known to the public. Exs. 2-5.  Plaintiff has done so in part through efforts to communicate with and influence legislators according to his views.  *See generally* Ex. 1.  As the article that is the subject of

---

[2] All exhibits cited in this Motion to Dismiss refer to exhibits to the concurrently-filed Declaration of Elizabeth Baldridge.

[3] On a Rule 12(b)(6) motion, Courts may consider the facts of the complaint, any documents incorporated by reference or attached to the complaint, and facts or documents that are subject to judicial notice.  *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015).  By citing and attaching as exhibits various outside sources pertaining to Plaintiff, the HuffPost Defendants do not seek to introduce matters outside of the pleadings; instead, they cite to the article at issue (linked in Plaintiff's Complaint ¶ 7) and to supporting third-party sources cited to and linked *within* that article.  *See* Baldridge Decl. (incorporating exhibits).

Plaintiff's Complaint describes, in 2019, Plaintiff met with Republican lawmakers to discuss "DNA sequencing." *Id.* Later, one of the congressmen with whom Plaintiff met called Plaintiff's views "abhorrent." *Id.*

According to sources linked to in the article at issue, Plaintiff has also communicated his political and social views publicly through media appearances. In 2016, he gave an interview to a radio program called *Fash the Nation* in which he discussed his view that racial and ethnic stereotypes are "largely true." Ex. 3. He also admitted to factoring such stereotypes into his own hiring practices. *Id.* In the same radio appearance, Plaintiff stated his belief that Jewish people are "neurotic" and negatively discussed the "evolutionary situation" of Jewish individuals. Ex. 2. Plaintiff stated: "the things that are the most screwed up in our society—media, education, and government—seem to have a disproportionate number of [Jewish people]." *Id.* Moreover, Plaintiff posted on the social forum site Reddit.com, "I do not and have never believed the six million figure," referring to the number of victims of the Holocaust. Ex. 4. He also stated in the same post that he does not believe gas chambers were used in the Holocaust. *Id.*[4] Plaintiff was permanently banned from the social media platform Twitter for his threatening and racially-charged statements. Exs. 2, 3. Specifically, Plaintiff received a lifetime ban for requesting donations to help "take out" a Black Lives Matter activist. Ex. 2. Relatedly, prior to his ban, Plaintiff led a social media campaign against various journalists and other individuals, including

---

[4] In February of 2018, when Florida Congressman Matt Gaetz gave Plaintiff a ticket to President Donald Trump's State of the Union address, the Anti-Defamation League wrote an open letter to Gaetz urging him to cut ties with Plaintiff. Ex. 5 (the Anti-Defamation League wrote, "It is an insult to the memories of those killed in the Holocaust, to their families, and to the Jewish community to bring to the State of the Union as your guest a Holocaust denier").

publishing their home addresses and private information online.  Ex. 3.  He also tweeted statements using racial slurs and stated, "anti-racist is anti-white."  Ex. 2.[5]

Undeterred by his Twitter ban, Plaintiff has deliberately continued promoting his views widely, including by meeting with lawmakers as discussed in the article at the center of Plaintiff's Complaint.  Ex. 1.

### B.     The HuffPost Article Describes, in Relevant Context, Plaintiff's Meeting with Lawmakers to Discuss DNA Sequencing.

Plaintiff's Complaint is based on an article HuffPost published on January 17, 2019 (the "Article").  Compl. ¶ 7; Ex. 1.  Defendant Campbell authored the Article, which discusses Plaintiff's visit to Washington, D.C., to meet with Republican representatives Andy Harris of Maryland and Phil Roe of Tennessee about Plaintiff's view toward "advocat[ing] for more publicly-available sequenced genomes."  *Id.*  The Article also reports that Congressman Roe's office later stated that Roe "would not have taken the meeting had he been aware of Mr. Johnson's previously expressed views—which [Roe] believes are abhorrent[.]"  *Id.*  The Article further

---

[5] Plaintiff is notorious for various other racially-charged statements, including: (1) defending former Education Secretary Bill Bennett's statement that "aborting black babies would drive down the crime rate," *see Mother Jones*, "The Rise and Fall of Twitter's Most Infamous Right-Wing Troll," December 16, 2014, available at
https://www.motherjones.com/politics/2014/12/charles-chuck-johnson-gotnews-rolling-stone/;
(2) his debunked statement that Staten Island, NY, police-involved shooting victim Eric Garner was a "street thug" who committed domestic abuse; *see id.*; (3) his tweet stating, "You can't spell triggering without [n----r]. Coincidence?" (spelling out racial slur in full),*see* "Chuck C. Johnson's Epic Drunken Racist Meltdown," May 1, 2015, available at
http://littlegreenfootballs.com/article/44577_Chuck_C._Johnsons_Epic_Drunken_Racist_Meltdown; and (4) publicly questioning whether an Amtrak engineer's sexuality was responsible for a deadly crash, claiming that "[g]ays have a higher rate of mental illness than do straights," *see The Advocate*, "Op-ed: The Amtrak Accident Isn't Part of the Gay Agenda," May 15, 2015, available at https://www.advocate.com/commentary/2015/05/15/op-ed-amtrak-accident-isnt-part-gay-agenda.

reports that "[t]he lawmakers faced immediate backlash" after taking the meeting with Plaintiff. *Id.*

The Article discusses the context of Plaintiff's visit to Washington, D.C. by noting and linking outside sources' descriptions of Plaintiff's past communications and associations.  *Id.*  The Article references those sources' characterization of Plaintiff as a white nationalist, and it also notes that Plaintiff has publicly questioned how many people were killed in the Holocaust.  *Id.* The Article reports on Plaintiff's ban from Twitter due to his threatening and racially-charged statements, and on Plaintiff's prior statement that he believes "anti-racist is anti-white."  *Id.*

The Article does not call Plaintiff a "white supremacist" or expressly state that he is anti-Semitic.  Compl. ¶ 8; *see* Ex. 1.  Rather, the Article states that Plaintiff "ran a crowdfunding site for white supremacists and Neo-Nazis," and notes that, after meeting with Johnson, Rep. Harris stated that he "disavow[s] and condemn[s] white supremacy," neither of which Plaintiff's Complaint denies as untrue.  *See* Ex. 1.

The Article states that Plaintiff is "widely known as a white nationalist . . . according to the Southern Poverty Law Center," a non-profit tracking extremist groups.  *Id.*[6]  Plaintiff's Complaint does not deny that he discussed DNA sequencing with lawmakers, as he "advocat[ed] for more publicly-available sequenced genomes."  Ex. 1.

The Article states that Plaintiff "questions how many Jewish people were killed in the Holocaust," which Plaintiff's Complaint does not allege is an untrue statement about Plaintiff.  *Id.* Other sources linked in the Article corroborate that Plaintiff does not believe six million people died in the Holocaust, and he does not believe gas chambers existed.  Ex. 4.

---

[6] *See* "What We Do," Southern Poverty Law Center, at https://www.splcenter.org/what-we-do, Ex. 6.

After HuffPost published the Article, Plaintiff did not file a complaint or ask for a retraction for nearly a year.  Then, on January 16, 2020, Plaintiff filed the instant suit.  *See* ECF No. 1.  The next day, on January 17, Plaintiff asked for a retraction of the article.  HuffPost published a prompt update, reporting Plaintiff's purported clarification on his views discussed in the Article.[7]

## III.   APPLICABLE LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include facts sufficient to establish the plausibility of the claims asserted, raising the "right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) ("Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege 'enough facts to state a claim to relief that is plausible on its face[.]'") (quoting *Twombly*, 550 U.S. at 547).  A complaint must do more than provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"; otherwise, it should be dismissed under Rule 12(b)(6).  *Twombly*, 550 U.S. at 555.

Rigorous application of these standards is critical where, as here, the plaintiff challenges newsworthy reporting.    "To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits."  *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017); *see also Michel*

---

[7] The HuffPost Article's update states: "A year after publication, Johnson's lawyers sent HuffPost a letter in which they assert Johnson 'believes that there was a systematic campaign to commit atrocities against Jewish people during the Second World War, that he believes that America should not be a nation only for white people, that he does not believe that white people are 'superior' to other races of human beings, and that he is not anti-Semitic.'"  Ex. 1.

*v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("[A]pplication of the plausibility pleading standard makes particular sense when examining public figure defamation suits").

On a Rule 12(b)(6) motion, Courts may consider the facts of the complaint, any documents incorporated by reference or attached to the complaint, and facts or documents that are subject to judicial notice. *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)); *see also Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."). Documents that "are central to the claim and referenced by the complaint" are incorporated by reference to it. *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019).[8]

---

[8] In the defamation context, courts regularly take judicial notice of articles that add to the "broader . . . context" of the dispute. *Condit v. Dunne*, 317 F. Supp. 2d 344, 357 (S.D.N.Y. 2004). *See also Ganino v. Citizens Utilities Co.*, 228 F.3d 158, 166 n.8 (2d Cir. 2000) (taking judicial notice of "well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment"); *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1123 n.5 (C.D. Cal. 1998) (taking judicial notice of the level of publicity and public discussion surrounding the O.J. Simpson trial); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013) ("the Court can take judicial notice of articles written by and about [the plaintiff]"). In *Trout Point Lodge, Ltd. v. Handshoe*, a Fifth Circuit defamation case, the court held that the district court was entitled to take judicial notice of articles about the plaintiff that appeared on a blog and that the defendant used to support its argument that the plaintiff failed to show falsity of the alleged defamatory statements. 729 F.3d 481, 490 n.12 (5th Cir. 2013). Here, the Court can take judicial notice of the articles attached as exhibits to the concurrently-filed Declaration of Elizabeth Baldridge because they are part of the "broader . . . context" of the dispute. *Condit*, 317 F. Supp. 2d at 357. Exhibits 2-5 are also articles "about [the plaintiff] that appear[] on [various news sites and blogs] . . . [of] which the court [i]s entitled to take judicial notice." *Trout Point Lodge*, 729 F.3d at 490 n.12; *see also Biro*, 963 F. Supp. 2d at 271 n.9) ("the Court can take judicial notice of articles written by and about [the plaintiff]"). Further, the articles are electronically attached (via hyperlink) to the article which the Complaint cites as its basis for the alleged defamation, making them "incorporated by reference" to the Complaint. *Ferguson*, 802 F.3d at 780 (courts can consider documents incorporated by reference to complaints). The HuffPost Defendants, therefore, respectfully request that the Court take judicial notice of exhibits 2-6 to the concurrently-filed Declaration of Elizabeth Baldridge.

## IV.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM OF LIBEL.

### A.   Plaintiff's Complaint Attributes Statements to the HuffPost Defendants that Do Not Appear in the Article.

The HuffPost Defendants cannot be liable for defamation based on statements they did not actually publish. *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 863 (Tex. App.—Houston [14th Dist.] 2017) (holding that newspaper could not be liable for discussing plaintiff doctor's prescribing practices in the same article as discussions of other doctors operating a "pill mill," but did not call plaintiff's practice a "pill mill").

Contrary to the Complaint's suggestion, the Article does not state that Plaintiff is a "white supremacist" or expressly call him anti-Semitic, contradicting Plaintiff's allegation that he was defamed by those terms. *Compare* Compl. ¶ 8; *with* Ex. 1. The Complaint does not deny the truth of the statements the Article *does* make about Plaintiff's actions—namely, that Plaintiff "ran a crowdfunding site for white supremacists and Neo-Nazis" and discussed DNA sequencing with lawmakers, "advocat[ing] for more publicly-available sequenced genomes." *See* Ex. 1; *see generally* Compl.

Plaintiff's libel claim should be dismissed or stricken to the extent it rests on allegations that the HuffPost Defendants published statements that Plaintiff is "a "white supremacist" or anti-Semitic, which the HuffPost Defendants did not actually publish.

### B.   The Article Conveys Constitutionally-Protected Opinions.

Even if the Complaint accurately quoted the HuffPost Article's statements—which it does not—the statements Plaintiff complains of would amount to nonactionable opinion, warranting dismissal as a matter of law. The U.S. Supreme Court has made clear that the First Amendment limits libel plaintiffs to complaints about defamatory *facts*. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). Statements that "cannot reasonably [be] interpreted as stating *actual facts* about

an individual" are not actionable.  497 U.S. at 20 (emphasis added; *quoting Hustler Magazine, Inc.*

*v. Falwell*, 485 U.S. 46, 50 (1988)).  Rhetoric, hyperbole, figurative language, and subjective

impressions created by a publication all are constitutionally protected.  *Greenbelt Publ. Ass'n v.*

*Bresler*, 398 U.S. 6, 14 (1970).  Particularly "when the facts underlying an opinion are set out in

the publication itself[,]" that opinion cannot form the basis of a defamation action in Texas.

*Brewer v. Capital Cities/ABC, Inc.*, 986 S.W.2d 636, 643 (Tex. App.—Fort Worth 1998, no pet.).

"Defamation law should not be used as a threat to force individuals to muzzle their truthful,

reasonable opinions and beliefs."  *Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556 (5th

Cir. 1997).  The line between privileged opinion and actionable assertions of fact is a question of

law for the court.  *Einhorn v. LaChance*, 823 S.W.2d 405, 411 (Tex. App.—Houston [1st Dist.]

1992, writ dism'd w.o.j.); *see also El Paso Times Co. v. Kerr*, 706 S.W.2d 797 (Tex. App.—El

Paso 1986, writ ref'd n.r.e.) (whether a statement is one of fact or opinion is a question of law).

Courts in Texas have held that statements similar to the allegedly defamatory statements

in the Article are non-actionable when they constitute an opinion, rather than a verifiable fact.

The Fifth Circuit, applying Texas law, held in *Jones v. Compass Bancshares, Inc.* that a publication

stating that a person was screaming, using obscenities, and making obscene gestures was not

defamatory as a matter of law because it was made up of "subjective" statements.  339 Fed. Appx.

410, 412 (5th Cir. 2009).  The court explained: "the word 'obscene' is, by its nature, an indefinite

or ambiguous individual judgment that rests solely in the eye of the beholder or is otherwise a

loose or figurative term."  In *El Paso Times, Inc. v. Kerr*, the court held that the allegedly libelous

statement that the plaintiff, a prosecutor, had "cheated" during the course of a prosecution was

nonactionable opinion.  706 S.W.2d at 798-99.  The court turned to the dictionary for a definition

of "cheat" and found that it "is not a word which has a precise meaning."  Further, "[c]heating has

9

no unique definition . . .   It means different things to different people at different times and in different situations."   As such, the court was "unable to construe the 'cheating' language as a factual assertion that [plaintiff] cheated."   *Id.*

Additionally, in *Harvest House Publishers v. The Local Church*, a publication that labeled a church as a "cult" was not actionable as defamation.  190 S.W.3d 204, 212 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).  The court held that the "truth or falsity" of such a statement depends on the subjective views of the reader.  *Id.*

Here, similar to stating that a person was using obscenities, describing a prosecutor as having "cheated," or calling a church a "cult," the Article makes statements of opinion which have no precise meaning in reference to Plaintiff.  *See Jones*, 339 Fed. App'x at 412; *El Paso Times*, 706 S.W.2d at 798-99; and *Harvest House*, 190 S.W.2d at 212.  Just like the word "cheated" in *El Paso Times*, "racist," "white supremacist," "Holocaust denier," and similar terms can "mean[] different things to different people at different times and in different situations."  706 S.W.2d at 798-99.  And like the word "obscene" used in the publication at issue in *Jones*, the meaning of the terms Plaintiff cites could only be determined based on "individual judgment that rests solely in the eye of the beholder."  339 Fed. Appx. at 412.  A determination of whether a person is a "racist," "white supremacist," or "Holocaust denier" can also be likened to an assessment of whether a church constitutes a "cult," which the court in *Harvest House* properly observed was a matter of one's personal opinion, and could not support a defamation claim.  190 S.W.2d at 212.

Courts around the country have held that the very statements Plaintiff alleges are defamatory constitute nonactionable opinion as a matter of law.  Calling a person "racist" or suggesting that they hold racially discriminatory views is widely regarded as a statement of opinion that cannot support a defamation claim.  *See, e.g.*, *Raible v. Newsweek, Inc.*, 341 F. Supp. 804,

806-07 (W.D. Pa. 1972) ("To call a person a bigot or other appropriate name descriptive of his political, racial, religious, economic, or sociological philosophies gives no rise to an action for libel"); *Buckley v. Littell*, 539 F.2d 882, 895 (2d Cir. 1976) ("The issue of what constitutes an 'openly fascist' journal is much a matter of opinion . . . as is the question what constitutes 'fascism' or 'the radical right'"); *Russell v. Davies*, 948 N.Y.S.2d 394 (2012) (statements by members of the press labeling a political candidate's remarks as "racist" and "anti-Semitic" were fully protected opinion based on disclosed facts); *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Southeast Fire Dep't*, 178 F. Supp. 3d 118, 165 (S.D.N.Y. 2016) (a speaker's "articulated concerns that Plaintiff was a racist or a future threat to others[] is nonactionable opinion"); *Garrard v. Charleston Cnty. School District*, --- S.E.2d ---, 2019 WL 5778086, at *11 (Ct. App. S.C., Nov. 6. 2019) ("whether something is racist is a matter of opinion"); *Covino v. Hagemann*, 627 N.Y.S.2d 894, 897-898 (1995) ("The court is not in a position to give its imprimatur to one view or the other; thus the phraseology used is one of opinion"; and "How does one empirically measure 'racial sensitivities'?  It is a concept for which reasonable people might differ"); *Forte v. Jones*, No. 1:11-cv-0718, 2013 WL 1164929, at *6 (E.D. Cal. Mar. 20, 2013) ("'racist' has no factually-verifiable meaning").

Further, calling a person a white nationalist and a "leader" in the Ku Klux Klan is a non-actionable statement of opinion.  *Edwards v. Detroit News, Inc.*, 910 N.W.2d 394, 403-04 (Mich. App. 2017) ("defendants' use of the term 'leader' [of the Ku Klux Klan] was ambiguous and could plausibly be understood to mean different things to different readers").  Courts have also disagreed with the idea that calling someone a "Holocaust denier" is a factually-verifiable assertion.  In *Leichty v. Bethel College*, the court held that discussing the plaintiff as a "Holocaust denier" was a matter of opinion.  No. 19-1064, 2019 WL 5549167, at *10 (D. Kan., Oct. 28, 2019).  The

11

plaintiff in *Leichty* argued instead that while he had a "revisionist view" about the Holocaust, he did not dispute that genocide occurred—similar to Plaintiff's statements in the instant case.  Ex. 4. The Court rejected this argument: "whether Plaintiff's 'revisionist view' could be considered a 'denial' or made him a 'denier' of a historical event was, under such circumstances, a matter of personal opinion."  Other courts have similarly held that stating that a person is anti-Semitic is "non-actionable opinion."  *See Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 509 (S.D.N.Y. 2012).  As a matter of law, the challenged statements in this case—even if the Complaint accurately quoted them, which the HuffPost Defendants dispute—are not capable of a verifiable factual meaning.  They are constitutionally protected opinions that cannot support a libel claim.[9]

### C.     The Article Is Protected Under Section 73.005 of the Texas Civil Practice & Remedies Code.

Under Texas law, a publisher cannot be held liable for the accurate reporting of allegations made by a third party on a matter of public concern.  The Texas Legislature codified this doctrine in 2015, when it amended the statutory libel provision found in Section 73.005(b) of the Texas Civil Practice and Remedies Code ("Section 73.005(b)"), which states that, "[i]n an action brought against a newspaper or other periodical or broadcaster, the defense [of truth] . . . applies to an

---

[9] Moreover, Plaintiff cannot base a defamation claim on opinions where the defendant discloses factual bases for those opinions.  *See, e.g.*, *Brewer*, 986 S.W.2d at 643 (noting that especially where the facts giving rise to an opinion are set forth in the publication itself, the statement of opinion cannot support a defamation claim).  The Article at issue here sets forth the support for its statements about Plaintiff, including with hyperlinks to sources.  *See* Ex. 1.  Plaintiff does not deny these underlying facts, including:  that he has questioned the number of victims of the Holocaust or the method of their death; that he has made racially-charged and threatening statements in the past; that he ran a crowdfunding site for white supremacists and Neo-Nazis; and that he met with lawmakers to discuss "DNA sequencing."  *See generally* Compl.; Ex. 1. Because the Article makes clear the facts underlying the statements of opinion about Plaintiff, this provides *further* constitutional protection.  Even if he disputed the underlying factual bases, the alleged statements are still unverifiable matters of constitutionally-protected opinion.

accurate reporting of allegations made by a third party regarding a matter of public concern." *See* Acts 2015, 84th Leg., ch. 191 (S.B. 627), § 1, eff. May 28, 2015.[10]

Section 73.005(b) has been repeatedly applied by Texas courts to protect the media's reporting of third-party allegations, even where the plaintiff disputed the accuracy of the underlying allegations. In *Dallas Morning News, Inc. v. Hall*, the court held that the defendant's statement that the plaintiff was "under investigation" did not constitute libel by implying the plaintiff had broken the law because Section 73.005(b) protected the defendant's report of third parties' allegations. 579 S.W.3d 370, 381-382 (Tex. 2019). The standard is whether the defendant's reporting on third-party allegations or reports is substantially true, and "the plaintiff has the burden . . . to show falsity at the motion to dismiss stage." *Id.* at 380; *see also Twombly*, 550 U.S. at 555 (plaintiff must allege facts sufficient to establish the plausibility of the claims asserted "above the speculative level"); *Iqbal*, 556 U.S. at 678 (same). Moreover, the Supreme Court of Texas has recognized that where an allegedly defamatory article "qualifie[s] [statements] with pervasive sourcing language," the article is poised to receive Section 73.005 protection. *Id.* at 381.[11]

---

[10] Even before the enactment of Section 73.005(b), Texas courts recognized a similar common-law protection for the accurate reporting of third-party allegations. *See*, *e.g.*, *McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990) (recognizing concept of neutral reportage without using the term itself); *but see Neely v. Wilson*, 418 S.W.3d 52, 65 (Tex. 2013) (declining to recognize such a doctrine under common law). This prior common-law doctrine and current statutory provision protect important constitutional interests, as reflected most notably in *Edwards v. National Audubon Society*, 556 F.2d 113, 120 (2d Cir. 1977). *Edwards* establishes a "neutral reportage" doctrine in American jurisprudence that permits the press to convey, in a neutral and accurate manner, allegations that are made by other responsible sources. *Id.* This element also has been expanded to protect the publication of one-sided advocacy pieces, as opposed to merely dry narratives. *See*, *e.g.*, *Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1434 (8th Cir. 1989).

[11] Hyperlinking sources within an article can be considered "sourcing." *See*, *e.g.*, *Adelson v. Harris*, 133 Nev. 512, 518 (Nev. 2017) (finding that "hyperlink[s] function[] like a footnote," and as such they serve as "specific, active, and accurate attribution").

13

Here, the subject of the Article is a matter of public concern, as it centers on matters of national politics and Plaintiff's attempt to influence them.  *See* Ex. 1; *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) ("speech 'deals with matters of public concern when it can be fairly considered as relating to *any* matter of political, social, or other concern to the community'") (emphasis added; quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)); *see also Charles v. Texas Lottery Comm'n*, No. A-06-CA-158, 2006 WL 3358420, at *4 (W.D. Tex., Nov. 17, 2006) (discussing the fact that "alleged institutionalized race discrimination [is], almost needless to say, [a] matter[] of public concern").

The Article at issue reports accurately on statements made by third parties about the Plaintiff.  *See* Ex. 1.  For instance, the Article states that Plaintiff is "widely known as a white nationalist . . . *according to the Southern Poverty Law Center*."  *Id.* (emphasis added).  That is how the Southern Poverty Law Center ("SPLC") describes Plaintiff in the SPLC report hyperlinked in the Article.  Ex. 2.  The Article also repeats the reports of several other sources, hyperlinking those third parties throughout and using "pervasive sourcing language," for the statements that Plaintiff questions how many people were killed in the Holocaust, that he ran a crowdfunding site for white supremacists and Neo-Nazis, and that he was banned from Twitter for threatening to "take out" a Black Lives Matter activist.  *See* Exs. 1-5; *Dallas Morning News*, 579 S.W.3d at 381.  Plaintiff makes no attempt to show that the Article's reporting on these sources is false or otherwise not substantially true, which is his burden.  *Dallas Morning News*, 579 S.W.3d at 380.  The HuffPost Defendants are therefore entitled to the protection of Section 73.005(b), and the Court can apply this important new piece of Texas law to dismiss Plaintiff's Complaint.

**D.    Plaintiff is a Public Figure Who Must Adequately Plead Actual Malice, Which He Failed to Do.**

Even if the statements Plaintiff challenges were somehow actionable and not privileged—which the HuffPost Defendants assert is not the case—the Complaint must nonetheless be dismissed because Plaintiff fails to satisfy his burden to plead actual malice. *Walker v. Beaumont Independent School District*, 938 F.3d 724, 744 (5th Cir. 2019) ("actual malice [is] a required element for public figure plaintiffs"). As a result of his prominent role in conservative politics and his deliberate engagement with the media on these topics, Plaintiff is at least a limited-purpose public figure who must plausibly plead actual malice. Courts regularly dismiss defamation claims by public figures at the Rule 12(b)(6) stage, particularly in cases involving hot-button political controversies. *See*, *e.g.*, *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 143-44 (D.D.C. 2017) (dismissing defamation claim in context of political controversy). This Court should do the same. Plaintiff does not plead any facts to support an allegation that, with respect to any supposed falsity in the HuffPost Defendants' reporting(which the HuffPost Defendants dispute),the HuffPost Defendants knew of such supposed falsity or that they somehow acted with reckless disregard of its truth.

**1.    Plaintiff Is, at a Minimum, a Limited-Purpose Public Figure.**

A limited-purpose public figure is someone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). Under Fifth Circuit precedent, this Court applies a three-part test in determining limited-purpose public figure status: (1) the controversy at issue must be public "both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;" (2) the plaintiff must participate in the controversy in more than a trivial role; and (3) the alleged

defamation must be related to the plaintiff's participation in the controversy.  *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433-34 (5th Cir. 1987).

Here, Plaintiff's Complaint and the Article at issue confirm that he is, at a minimum, a limited-purpose public figure.  *See* Compl. ¶ 6; Ex. 1 [HuffPost article].  Plaintiff's Complaint describes him as a public-facing person, "undeniably involved with conservative political causes." Compl. ¶ 6.  The Complaint itself provides enough to establish his public figure status.  Plaintiff's public appearances and widely-reported-on statements on social media also cement this status as he discusses the much-publicized controversy of alt-right politics and racially motivated rhetoric. Exs. 2, 3, 4; *see Collins v. WAFB, LLC*, No. 16-15648, 2017 WL 1383948, at *3 (E.D. La. Apr. 18, 2017) ("The Fifth Circuit has . . . identified categories of speech that constitute matters of public concern, including, for example, associating with political organizations. . . speech made against the backdrop of ongoing commentary and debate in the press, or speech relating to racial discrimination" (internal brackets and quotation marks omitted)); *cf. Brueggemeyer v. Am. Broadcasting Co.*, 684 F. Supp. 452, 458 (N.D. Tex. 1988) (businessman was limited-purpose public figure because he "'voluntarily engaged in a course of conduct that was bound to invite attention and comment'" (quoting *Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859, 861 (5th Cir. 1978))).

As the Texas Court of Appeals recognized in *Mohamed v. Center for Security Policy*, media appearances like Plaintiff's transform a private figure into a limited-purpose public figure, as they reflect a choice by the plaintiff "to engage in activities that involve[] increased public exposure and media scrutiny[.]"  554 S.W.3d 767, 775 (Tex. App.—Dallas 2018, pet. denied); *see also Chevalier v. Animal Rehab. Ctr., Inc.*, 839 F. Supp. 1224, 1234 (N.D. Tex. 1993) (holding that plaintiff was limited-purpose public figure under Fifth Circuit's *Trotter* test because he

16

"actively participated in the controversy by appearing on television and giving interviews").  And like the plaintiff in *WFAA-TV, Inc. v. McLemore*, *supra*, who voluntarily made media-facing statements about a specific public controversy (the success of a Bureau of Alcohol, Tobacco, and Firearms raid on a religious sect compound) and was considered a public figure, here, Plaintiff has voluntarily put himself at the center of a controversial discussion.  978 S.W.2d 568, 572 (Tex. 1998).  Indeed, the Article itself reports on Plaintiff's continued insertion into the wider public controversy on topics like DNA sequencing.  *See* Ex. 1.

### 2.  Plaintiff Fails to Plausibly Allege Actual Malice.

Plaintiff's factual allegations fall far short of satisfying his pleading burden on the issue of actual malice.  To meet First Amendment standards, a plaintiff must make a clear and convincing showing that at the time of publication, the defendant actually knew its statement was false or acted with reckless disregard of its truth.  *Peter Scalamandre*, 113 F.3d at 560.  A publisher acts with reckless disregard when it "entertain[s] serious doubts as to the truth of [the] publication" or has a "high degree of awareness of . . . probable falsity."  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (citation omitted).  This is a "'daunting,'" difficult-to-meet standard.  *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 590 (D.C. Cir. 2016).

The standard is no less "daunting" at the Rule 12(b)(6) stage, where a public-figure plaintiff must allege *facts* that would plausibly support a finding of actual malice.  *See Michel*, 816 F.3d at 701-02 (dismissing claim under Rule 12(b)(6) based on plaintiff's failure to plead facts plausibly supporting a finding of actual malice).  Under the federal pleading standards set forth in *Iqbal*, 556 U.S. at 678, general or conclusory allegations are insufficient to plead actual malice, as are allegations that offer no more than "labels and conclusions" or merely parrot the legal standard.  Several circuit courts have explicitly held that the *Iqbal* prohibition against conclusory allegations applies to pleading actual malice.  *See*, *e.g.*, *Nelson Auto Center, Inc. v. Multimedia Holdings*

17

*Corp.*, --- F.3d ---, 2020 WL 1056854, *4 (8th Cir. Mar. 5, 2020) ("Every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice" (internal quotation marks and brackets omitted)); *Michel*, 816 F.3d at 701-02 (holding that plaintiff must allege *plausible* facts supporting a finding of actual malice); *Biro v. Conde Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015) (the "plausibility standard [for federal pleading] applies to pleading intent" for purposes of actual malice supporting a defamation claim); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012) ("[a]pplying the *Iqbal* standard" and dismissing claim for failure to plead actual malice); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012) (same).

Plaintiff's Complaint does nothing more than parrot the actual malice standard. Compl. ¶ 12. Courts have consistently held that such allegations are insufficient to satisfy a public figure's actual malice pleading burden and should be disregarded. *See, e.g.*, *Michel*, 816 F.3d at 703-04 ("For starters, we can disregard the portions of the complaint where [the plaintiff] alleges in a purely conclusory manner that the defendants were 'reckless' in publishing the article."); *Schatz*, 669 F.3d at 56 ("[plaintiff's] complaint used actual-malice buzzwords . . . But these are merely legal conclusions, which must be backed by well-pled facts"); *Egiazaryan v. Zalmayev*, No. 11-Civ. 2670 (PKC), 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011) (plaintiff's "repeated assertion that [defendant] acted with malice is unavailing because it is a legal conclusion not entitled to presumption of truth, and he alleges no facts plausibly supporting that conclusion").

Plaintiff's allegations on the subject of actual malice do not even rise to the level of those in each of the above cases, where the courts dismissed each complaint for failure to adequately plead actual malice. Plaintiff does not make ***any*** allegations about actual malice beyond the

conclusory statement that "Defendants acted with negligence as well as actual malice and/or reckless disregard for the truth[.]"  Compl. ¶ 12.  This is plainly insufficient under any articulated standard for pleading actual malice.[12]

Plaintiff's Complaint does not adequately allege actual malice, and it should be dismissed for this additional reason.

## V.   PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO AMEND BECAUSE AMENDMENT WOULD BE FUTILE

Amendment cannot save Plaintiff's Complaint from dismissal on the numerous bases set forth above.   Amendment in the face of the HuffPost Defendants' arguments regarding nonactionable opinion would be futile because the crux of those statements—which cannot support a claim for defamation—is unchangeable.  *See Partington v. Bugliosi*, 56 F.3d 1147, 1162 (9th Cir. 1995) (affirming district court's dismissal of defamation claim without leave to amend where allegedly defamatory statements were held to be nonactionable opinion protected by the First Amendment).  Similarly, amendment could not change that some of the challenged statements were not actually published.  Additionally, no amendment could change the fact that the HuffPost Defendants responsibly relied on outside sources in their reporting, entitling them to the statutory and/or common law neutral reportage doctrines.  Thus, just as there are several bases on which

---

[12] Plaintiff also cannot allege actual malice by saying that the HuffPost Defendants "ran a hit job" on him, as it is well established that even credible allegations of ill will or bias are insufficient to constitute actual malice.  Compl. ¶ 7; *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 317 (5th Cir. 1995) ("Malice is not implied or presumed from the mere fact of publication, nor may it be inferred alone from the character or vehemence of the language used, nor found from the falsity of the statement alone."); *Peter Scalamandre*, 113 F.3d at 561 (allegation that defendant disliked plaintiff and had profit motive did not support finding of actual malice); *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 165 (Tex. 2004) ("[A]ctual malice concerns the defendant's attitude toward the truth, not toward the plaintiff."); *Huckabee v. Time Warner Entmn't Co.*, 19 S.W.3d 413, 425 (Tex. 2000) ("[E]vidence of pressure to produce stories from a particular point of view, even when they are hard-hitting or sensationalistic, is no evidence of actual malice.").

this Court should dismiss Plaintiff's Complaint, it should also deny Plaintiff the ability to amend, on any of the various, independent grounds.[13]

## VI.    CONCLUSION

For the reasons set forth in this motion, and subject to their motion to dismiss for lack of personal jurisdiction, the HuffPost Defendants respectfully request that the Court grant this motion and dismiss Plaintiff Charles Johnson's Complaint against them.  Moreover, as explained above, any request for leave to amend would be futile and should be denied.  The Court should enter judgment in the HuffPost Defendants' favor, along with all such other relief to which they are entitled.

---

[13] *See also Arpaio v. Zucker*, 414 F. Supp. 3d 84, 93-94 (D.D.C. 2019) (dismissing defamation case without leave to amend for failure to adequately plead actual malice); *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 95 (D.D.C. 2018) (same); *Deripaska*, 282 F. Supp. 3d at 149 (same); *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 145 (D.D.C. 2016) (same); *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 219 (D.D.C. 2012) (same).

DATED:  March 19, 2020                  Respectfully submitted,

                                        /s/ *Jean-Paul Jassy*
                                        Jean-Paul Jassy

                                        Jean-Paul Jassy (Admitted *Pro Hac Vice*)
                                        William T. Um (Admitted *Pro Hac Vice*)
                                        Elizabeth Baldridge (Admitted *Pro Hac Vice*)
                                        JASSY VICK CAROLAN LLP
                                        800 Wilshire Boulevard, Suite 800
                                        Los Angeles, CA 90017
                                        Telephone: (310) 870-7048
                                        Facsimile: (310) 870-7010
                                        jpjassy@jassyvick.com
                                        wum@jassyvick.com
                                        ebaldridge@jassyvick.com

                                        Patrick W. Mizell
                                        ATTORNEY IN CHARGE
                                        Texas Bar No. 14233980
                                        Federal ID No. 36390
                                        VINSON & ELKINS L.L.P.
                                        1001 Fannin Street, Suite 2500
                                        Houston, Texas 77002-6760
                                        Telephone: (713) 758.3882
                                        Facsimile: (713) 615.5493
                                        pmizell@velaw.com

                                        Marc A. Fuller
                                        Texas Bar No. 24032210
                                        Federal ID No. 2035080
                                        Megan M. Coker
                                        Texas Bar No. 24087323
                                        Federal ID No. 178550
                                        VINSON & ELKINS L.L.P.
                                        2001 Ross Avenue, Suite 3900
                                        Dallas, TX 75201
                                        Telephone: (214) 220-7700
                                        mfuller@velaw.com
                                        megancoker@velaw.com

                                        *Attorneys for Defendants TheHuffingtonPost.com,*
                                        *Inc. and Andy Campbell*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that this document was duly served on all counsel of record through the Court's electronic filing system on March 19, 2020.

<u>/s/ *Marc Fuller*</u>
Marc Fuller