**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Charles Johnson, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-cv-00179 |
| | § | |
| TheHuffingtonPost.com, Inc., | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

### DEFENDANT THEHUFFINGTONPOST.COM, INC.'S
### MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
### UNDER RULE 12(b)(6)

# TABLE OF CONTENTS

Page

I.      INTRODUCTION AND SUMMARY OF THE ARGUMENT ........................................1

II.     FACTUAL BACKGROUND ........................................................................................2

      A.      Plaintiff Is An Unabashed, Well-Known, Far-Right Political Activist ..................2

      B.      The HuffPost Article Describes Plaintiff's Meeting with Lawmakers ...................4

III.    APPLICABLE LEGAL STANDARDS ........................................................................5

IV.     THE FAC SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ..............7

      A.      Plaintiff's FAC Attributes Statements and Implications to HuffPost that Do
            Not Appear in, and Cannot Reasonably Be Implied from, the Article ...................7

      B.      The Article Conveys Constitutionally-Protected Opinions .....................................9

      C.      Even if the Allegedly Defamatory Statements Supported a Verifiably Factual
            Meaning—Which They Do Not—The Gist of the Article is Substantially True ..12

      D.      The Article Is Protected Under Section 73.005 of the Texas Civil Practice &
            Remedies Code .....................................................................................................13

      E.      Plaintiff is a Public Figure Who Must Adequately Plead Actual Malice,
            Which He Failed to Do .........................................................................................15

            1.      Plaintiff Is, at a Minimum, a Limited-Purpose Public Figure ...................16

            2.      Plaintiff Fails to Plausibly Allege Actual Malice ........................................18

V.      CONCLUSION .............................................................................................................20

i

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Adelson v. Harris*,
    133 Nev. 512 (Nev. 2017)................................................................................14

*Arpaio v. Zucker*,
    414 F. Supp. 3d 84 (D.D.C. 2019) ..............................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................5, 6, 14, 18

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015)........................................................................18

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013).......................................................6, 7

*Brady v. Klentzman*,
    515 S.W.3d 878 (Tex. 2017).......................................................................14

*Brewer v. Capital Cities/ABC, Inc.*,
    986 S.W.2d 636 (Tex. App.—Fort Worth 1998, no pet.) ............................9, 12

*Brueggemeyer v. Am. Broadcasting Co.*,
    684 F. Supp. 452 (N.D. Tex. 1988) ...........................................................16

*Buckley v. Littell*,
    539 F.2d 882 (2d Cir. 1976)........................................................................11

*Charles v. Texas Lottery Comm'n*,
    No. A-06-CA-158, 2006 WL 3358420 (W.D. Tex., Nov. 17, 2006)................14

*Chevalier v. Animal Rehab. Ctr., Inc.*,
    839 F. Supp. 1224 (N.D. Tex. 1993) .........................................................17

*Cochran v. NYP Holdings, Inc.*,
    58 F. Supp. 2d 1113 (C.D. Cal. 1998) .........................................................6

*Collins v. WAFB, LLC*,
    No. 16-15648, 2017 WL 1383948 (E.D. La. Apr. 18, 2017)..........................16

*Condit v. Dunne*,
    317 F. Supp. 2d 344 (S.D.N.Y. 2004)........................................................6, 7

*Covino v. Hagemann*,
    627 N.Y.S.2d 894 (1995)............................................................................11

*Cox Media Grp., LLC v. Joselevitz*,
    524 S.W.3d 850 (Tex. App.—Houston [14th Dist.] 2017)...........................7, 8

*Dallas Morning News, Inc. v. Hall*,
   579 S.W.3d 370 (Tex. 2019)....................................................................7, 14, 15

*Dallas Morning News, Inc. v. Tatum*,
   554 S.W.3d 614 (2018) ...................................................................................7, 8

*Edwards v. Detroit News, Inc.*,
   910 N.W.2d 394 (Mich. App. 2017) ................................................................11

*Egiazaryan v. Zalmayev*,
   880 F. Supp. 2d 494 (S.D.N.Y. 2012)..............................................................12

*Einhorn v. LaChance*,
   823 S.W.2d 405 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.).....................9

*El Paso Times Inc. v. Kerr*,
   706 S.W.2d 797 (Tex. App.—El Paso 1986, writ ref'd n.r.e.) .....................................9, 10

*Fairbanks v. Roller*,
   314 F. Supp. 85 (D.D.C. 2018) ...................................................................15, 20

*Ferguson v. Bank of N.Y. Mellon Corp.*,
   802 F.3d 777 (5th Cir. 2015) .....................................................................2, 6, 7

*Forte v. Jones*,
   No. 1:11-cv-0718, 2013 WL 1164929 (E.D. Cal. Mar. 20, 2013)....................................11

*Garrard v. Charleston Cnty. School District*,
   838 S.E.2d 698 (Ct. App. S.C. 2019)................................................................11

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974)........................................................................................16

*Green v. CBS, Inc.*,
   286 F.3d 281 (5th Cir. 2002) ...........................................................................12

*Greenbelt Publ. Ass'n v. Bresler*,
   398 U.S. 6 (1970)...............................................................................................9

*Gubarev v. Buzzfeed, Inc.*,
   340 F. Supp. 3d 1304 (S.D. Fla. 2018) ...........................................................14

*Harte-Hanks Commun., Inc. v. Connaughton*,
   491 U.S. 657 (1989).........................................................................................19

*Harvest House Publishers v. The Local Church*,
   190 S.W.3d 204 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)...........................10

*Hearst Corp. v. Skeen*,
   159 S.W.3d 633 (Tex. 2005).............................................................................19

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 46 (1988)..............................................................................................9

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*,
   912 F.3d 759 (5th Cir. 2019) .............................................................................6

iii

*Jankovic v. Int'l Crisis Grp.*,
    822 F.3d 576 (D.C. Cir. 2016) .......................................................................18

*Jones v. Compass Bancshares, Inc.*,
    339 Fed. Appx. 410 (5th Cir. 2009) ...........................................................9, 10

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
    856 F.3d 106 (D.C. Cir. 2017) .......................................................................6

*Leichty v. Bethel College*,
    No. 19-1064, 2019 WL 5549167 (D. Kan. Oct. 28, 2019) ..............................11

*Masson v. The New Yorker*,
    501 U.S. 496 (1991).................................................................................12, 13

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
    674 F.3d 369 (4th Cir. 2012) .........................................................................18

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ..................................................................18, 19

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990).............................................................................................9

*Mohamed v. Center for Security Policy*,
    554 S.W.3d 767 (Tex. App.—Dallas 2018, pet. denied) .................................17

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*,
    512 F.3d 137 (5th Cir. 2007) ...........................................................................5

*Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*,
    951 F.3d 952 (8th Cir. 2020) .........................................................................18

*New Times, Inc. v. Isaacks*,
    146 S.W.3d 144 (Tex. 2004)......................................................................19, 20

*Norris v. Hearst Tr.*,
    500 F.3d 454 (5th Cir. 2007) ...........................................................................6

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ..........................................................................20

*Peter Scalamandre & Sons, Inc. v. Kaufman*,
    113 F.3d 556 (5th Cir. 1997) .................................................................9, 18, 19

*Raible v. Newsweek, Inc.*,
    341 F. Supp. 804 (W.D. Pa. 1972)...................................................................11

*Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Southeast Fire Dep't*,
    178 F. Supp. 3d 118 (S.D.N.Y. 2016)..............................................................11

*Rosanova v. Playboy Enters., Inc.*,
    580 F.2d 859 (5th Cir. 1978) ..........................................................................17

*Russell v. Davies*,
    948 N.Y.S.2d 394 (2012)................................................................................11

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012) .................................................................18, 19

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ...........................................................................18, 19

*Trotter v. Jack Anderson Enters., Inc.*,
   818 F.2d 431 (5th Cir. 1987) .............................................................16, 17

*Trout Point Lodge, Ltd. v. Handshoe*,
   729 F.3d 481 (5th Cir. 2013) ...................................................................6, 7

*Tu Nguyen v. Duy Tu Hoang*,
   318 F. Supp. 3d 983 (S.D. Tex. 2018) .......................................................7

*WFAA-TV, Inc. v. McLemore*,
   978 S.W.2d 568 (Tex. 1998)......................................................................17

*Walker v. Beaumont Independent School District*,
   938 F.3d 724 (5th Cir. 2019) ....................................................................15

*Wehling v. Columbia Broadcasting Sys.*,
   721 F.2d 506 (5th Cir. 1983) ....................................................................12

*Willis v. Roche Biomedical Labs., Inc.*,
   61 F.3d 313 (5th Cir. 1995) ......................................................................19

*Zerangue v. TSP Newspapers, Inc.*,
   814 F.2d 1066 (5th Cir. 1987) ..................................................................20

## U.S. CONSTITUTION

First Amendment ...................................................................................1, 6, 9, 18

## FEDERAL RULES

Federal Rule of Civil Procedure 12(b)(2) ....................................................5

Federal Rule of Civil Procedure 12(b)(6) ............................1, 2, 5, 6, 15, 18

## STATE STATUTES

Texas Civil Practice & Remedies Code
   § 73.005...................................................................................2, 13, 14, 20
   § 73.005(b).................................................................................13, 14, 15

MISCELLANEOUS

"Chuck C. Johnson's Epic Drunken Racist Meltdown," May 1, 2015,
    http://littlegreenfootballs.com/article/44577_Chuck_C._Johnsons_Epic_Drunken_
    Racist_Meltdown ................................................................................................................3

*Mother Jones*, "The Rise and Fall of Twitter's Most Infamous Right-Wing Troll," December 16,
    2014, https://www.motherjones.com/politics/2014/12/charles-chuck-johnson-gotnews-
    rolling-stone/ ....................................................................................................................3

*NBC News*, "Activist who met with congressmen about 'DNA' posted about black 'violence
    gene'," January 17, 2019, https://www.nbcnews.com/politics/congress/activist-who-
    met-congressmen-about-dna-posted-about-black-violence-n959931 ...............................17

*Slate*, "Two Republican Congressmen Met With a Holocaust Denier About DNA 'Research',"
    January 17, 2019, https://slate.com/news-and-politics/2019/01/republican-congressmen-
    holocaust-denier-dna-genetics.html ................................................................................17

*The Advocate*, "Op-ed: The Amtrak Accident Isn't Part of the Gay Agenda," May 15, 2015,
    https://www.advocate.com/commentary/2015/05/15/op-ed-amtrak-accident-isnt-part-
    gay-agenda .........................................................................................................................3

*The Atlantic*, "Will the Alt-Right Promote a New Kind of Racist Genetics?" December 29,
    2016, https://www.theatlantic.com/science/archive/2016/12/genetics-race-ancestry-
    tests/510962/ .....................................................................................................................17

*The Hill*, "Activist who met with GOP lawmakers also promotes 'black violence' gene: report,"
    January 17, 2019, https://thehill.com/blogs/blog-briefing-room/news/425961-gop-
    congressmen-discussed-genetics-with-an-alt-right-activist .............................................17

*Vice*, "Alt-right trolls are getting 23andme genetic tests to 'prove' their whiteness," October 8,
    2016, https://www.vice.com/en_us/article/vbygqm/alt-right-trolls-are-getting-23andme-
    genetic-tests-to-prove-their-whiteness .............................................................................17

"What We Do," Southern Poverty Law Center, https://www.splcenter.org/what-we-do .............4

Subject to and without waiving its motion to dismiss for lack of personal jurisdiction, Defendant TheHuffingtonPost.com, Inc. ("HuffPost") moves to dismiss Plaintiff Charles Johnson's ("Plaintiff's") First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6):

## I.  INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiff Charles Johnson is notorious for making racially offensive, anti-Semitic, and homophobic statements online and in other media.  He has publicly denied that six million Jews perished in the Holocaust.  He has said that the gas chambers at Auschwitz were "not real."  He questioned whether an Amtrak engineer's sexuality was responsible for a deadly crash, claiming that "[g]ays have a higher rate of mental illness than do straights."  And he stated that it is "obvious" that African-Americans are "dumber" than whites.  In addition, as the HuffPost article at issue reports with hyperlinks to underlying sources, Plaintiff "crowdfund[ed] . . . for white supremacists and Neo-Nazis," Twitter banned him for life for making threats against a Black Lives Matter activist, and Plaintiff stated that "anti-racist is anti-white."  But despite all this, Plaintiff takes issue with any suggestion that he could be validly characterized by anyone as a white nationalist, a white supremacist, a Holocaust denier or otherwise anti-Semitic.

Plaintiff's FAC should be dismissed for a number of independent reasons.  Aside from the fact that the article at issue (the "Article") does not actually contain some of the statements Plaintiff complains of, this class of terms constitutes nonactionable opinion protected under the First Amendment.  In addition, the FAC's new allegations that the Article contains certain previously unmentioned defamatory implications are not reasonable as a matter of law.  Even if all of Plaintiff's allegations about what the Article says were taken as verifiable assertions of fact, the Article is substantially true.  Moreover, the Article is an accurate reporting of reputable

third parties' reports about Plaintiff's involvement with alt-right, racially-charged causes, which is protected under Texas Civil Practice & Remedies Code section 73.005.

Independent of these various privileges and defenses, each of which is sufficient to grant this Motion, Plaintiff's claim fails as a matter of law because he is a public figure, and he fails to plausibly plead actual malice. Formulaic recitations of actual malice do not suffice, nor do the FAC's theories for HuffPost's purported actual malice. Plaintiff's FAC suffers from numerous uncurable defects, and it should be dismissed without leave to further amend.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff Is an Unabashed, Well-Known, Far-Right Political Activist.

Plaintiff Charles Johnson is a far-right political activist who regularly engages with the media to disseminate his offensive views on race, culture, and politics. FAC ¶ 6 (Plaintiff alleges that he is "admittedly involved with conservative political causes"); Declaration of Elizabeth Baldridge ("Baldridge Decl."), Ex. 3[1] (describing Johnson as a former *Breitbart News* writer who, among other things, has stated his political views through radio broadcast and social media).[2] In particular, Plaintiff has made his views on race-related issues known to the public. Exs. 2-6. He has done so in part through efforts to communicate with and influence legislators according to his views. *See generally* Ex. 1. As the Article describes, in 2019, Plaintiff met with two members of Congress to discuss what they described as "DNA sequencing." *Id.*

---

[1] All exhibits are attached to the concurrently-filed Baldridge Decl.

[2] On a Rule 12(b)(6) motion, Courts may consider the facts of the complaint, any documents incorporated by reference or attached to the complaint, and facts or documents that are subject to judicial notice. *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015). By citing and attaching as exhibits various outside sources pertaining to Plaintiff, HuffPost does not seek to introduce matters outside of the pleadings; instead, it cites to the Article (hyperlinked in Plaintiff's FAC ¶ 7) and to supporting third-party sources cited to and hyperlinked *within* the Article as a reader who clicked on the hyperlinks would view them. Exs. 1-6.

According to sources hyperlinked in the Article, Plaintiff has also communicated his political and social views publicly through media appearances.  In 2016, he appeared on a radio program called *Fash the Nation* in which he discussed his view that racial and ethnic stereotypes are "largely true."  Ex. 3.  In the same radio appearance, Plaintiff stated his belief that Jewish people are "neurotic" and are part of a negative "evolutionary situation."  Ex. 2.  Plaintiff stated: "the things that are the most screwed up in our society—media, education, and government— seem to have a disproportionate number of [Jewish people]."  *Id.*  Plaintiff has also said, "I do not and have never believed the six million figure," referring to the number of victims of the Holocaust.  Ex. 4.  He also stated in the same post that he does not believe gas chambers were used in the Holocaust.  *Id.*[3]  Twitter permanently banned Plaintiff from its platform for requesting donations to help "take out" a Black Lives Matter activist.  Exs. 2, 3.  Plaintiff also tweeted statements using racial slurs and stated, "anti-racist is anti-white."  Ex. 2.[4]

---

[3] When Congressman Matt Gaetz gave Plaintiff a ticket to President Trump's State of the Union address, the Anti-Defamation League wrote an open letter urging Gaetz to cut ties with Plaintiff: "It is an insult to the memories of those killed in the Holocaust, to their families, and to the Jewish community to bring to the State of the Union as your guest a Holocaust denier."  Ex. 5.

[4] Plaintiff is notorious for various other racially-charged statements, including: (1) a tweet stating, "You can't spell triggering without [n----r]. Coincidence?" (spelling out racial slur in full), *see* "Chuck C. Johnson's Epic Drunken Racist Meltdown," May 1, 2015, available at http://littlegreenfootballs.com/article/44577_Chuck_C._Johnsons_Epic_Drunken_Racist_Meltdown; (2) defending former Education Secretary Bill Bennett's statement that "aborting black babies would drive down the crime rate," *see Mother Jones*, "The Rise and Fall of Twitter's Most Infamous Right-Wing Troll," December 16, 2014, available at https://www.motherjones.com/politics/2014/12/charles-chuck-johnson-gotnews-rolling-stone/; (3) his debunked statement that police-involved shooting victim Eric Garner was a "street thug" who committed domestic abuse; *see id.*; ; and (4) publicly questioning whether an Amtrak engineer's sexuality was responsible for a deadly crash, claiming that "[g]ays have a higher rate of mental illness than do straights," *see The Advocate*, "Op-ed: The Amtrak Accident Isn't Part of the Gay Agenda," May 15, 2015, available at https://www.advocate.com/commentary/2015/05/15/op-ed-amtrak-accident-isnt-part-gay-agenda.

3

### B.      The HuffPost Article Describes Plaintiff's Meeting with Lawmakers.

The FAC is based on an article HuffPost published on January 17, 2019.  FAC ¶ 7; Ex. 1.
The Article, headlined "2 GOP Lawmakers Host Chuck Johnson, Holocaust-Denying White
Nationalist," reports that Plaintiff met with U.S. Representatives Andy Harris of Maryland and
Phil Roe of Tennessee and that Representative Roe's office stated that, during the meeting,
Johnson "'advocated for more publicly-available sequenced genomes.'"  *Id.* (quoting
spokesperson for Rep. Roe).  The Article also reports that Representative Roe's office later
stated Roe "would not have taken the meeting had he been aware of Mr. Johnson's previously
expressed views—which [Roe] believes are abhorrent[.]"  *Id.*

While the Article refers to Plaintiff as a white nationalist and a Holocaust denier, the
Article does not call Plaintiff a "white supremacist," a "Neo-Nazi," or expressly state that he is
anti-Semitic.  FAC ¶¶ 5-6; *see* Ex. 1.  Rather, the Article, hyperlinking to a third-party source,
states that Plaintiff "ran a crowdfunding site for white supremacists and Neo-Nazis," and notes
that, after meeting with Johnson, Rep. Harris stated that he "disavow[s] and condemn[s] white
supremacy."  *See* Exs. 1, 6.  The Article states that Plaintiff is "widely known as a white
nationalist . . . according to the [SPLC]," a non-profit tracking extremist groups.  *Id.*[5]  The
Article states that he "advocat[ed] for more publicly-available sequenced genomes," Ex. 1, but,
contrary to his allegations about the face of the Article, it does not state or imply that Johnson
called for "harm" or "genocide against non-whites and/or Jews," FAC ¶ 10.

Hyperlinking to a third-party source quoting Plaintiff's statements disputing that six
million people died in the Holocaust and the existence of gas chambers, the Article states that
Plaintiff "questions how many Jewish people were killed in the Holocaust."  Exs. 1, 4.  The FAC

---

[5] *See* "What We Do," Southern Poverty Law Center, at https://www.splcenter.org/what-we-do.

vaguely alleges that Plaintiff "believes that there was a systematic campaign to commit atrocities against Jewish people in the Second World War" without expressly disavowing his quotes in the hyperlinked source.  FAC ¶ 6.  The Article also hyperlinks to reports on Plaintiff's ban from Twitter due to his threatening and racially-charged statements, and on Plaintiff's prior statement that he believes "anti-racist is anti-white."  *See* Exs. 1, 2.  Plaintiff is clear that he "***does not complain*** regarding the truth or falsity" of statements "attributed to third party sources" in the Article.  FAC ¶ 8 (emphasis added).

Plaintiff did not file a complaint or ask for a retraction for nearly a year.  Then, on January 16, 2020, Plaintiff filed the instant suit.  *See* ECF No. 1.  The next day, on January 17, Plaintiff asked for a retraction, correction or clarification of the article.  HuffPost promptly published an update, reflecting Plaintiff's purported clarification on his views.  FAC ¶ 13(d).[6]

HuffPost moved to dismiss Plaintiff's original complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  *See* ECF Nos. 19, 20.  Plaintiff filed his FAC and briefs in response, and HuffPost withdrew its original motions to dismiss (*see* ECF Nos. 25-29).  HuffPost now moves to dismiss Plaintiff's FAC.

## III.    APPLICABLE LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include facts sufficient to establish the plausibility of the claims asserted, raising the "right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555 (2007); *Nationwide Bi-*

---

[6] The Article's update states: "UPDATE: January 24, 2020 - A year after publication, Johnson's lawyers sent HuffPost a letter in which they assert Johnson 'believes that there was a systematic campaign to commit atrocities against Jewish people during the Second World War, that he believes that America should not be a nation only for white people, that he does not believe that white people are 'superior' to other races of human beings, and that he is not anti-Semitic.'"  Ex. 1; FAC ¶ 13(d).

*Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007) ("Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege 'enough facts to state a claim to relief that is plausible on its face[.]'") (quoting *Twombly*, 550 U.S. at 547).  A complaint must do more than provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"; otherwise, it should be dismissed under Rule 12(b)(6).  *Twombly*, 550 U.S. at 555. Rigorous application of these standards is critical where, as here, the plaintiff challenges newsworthy reporting.  "To preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017).

On a Rule 12(b)(6) motion, Courts may consider the facts of the complaint, any documents incorporated by reference or attached to the complaint, and facts or documents that are subject to judicial notice.  *Ferguson*, 802 F.3d at 780; *see also Norris v. Hearst Tr.*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").  Documents "central to the claim and referenced by the complaint" are incorporated by reference to it.  *Ironshore Europe DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019).[7]

---

[7] In defamation cases, courts regularly take judicial notice of articles that add to the "broader . . . context" of the dispute.  *Condit v. Dunne*, 317 F. Supp. 2d 344, 357 (S.D.N.Y. 2004).  *See also Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1123 n.5 (C.D. Cal. 1998) (taking judicial notice of the level of publicity and public discussion surrounding the O.J. Simpson trial); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013) ("the Court can take judicial notice of articles written by and about [the plaintiff]").  In *Trout Point Lodge, Ltd. v. Handshoe*, a Fifth Circuit defamation case, the court held that the district court properly took judicial notice of articles about the plaintiff that appeared on a blog and that the defendant used to support its argument that the plaintiff failed to show falsity.  729 F.3d 481, 490 n.12 (5th Cir. 2013).

Here, the Court can take judicial notice of the articles attached as exhibits to the concurrently-filed Baldridge Decl. because they are part of the "broader . . . context" of the

**IV.     THE FAC SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

    **A.     Plaintiff's FAC Attributes Statements and Implications to the Article that Do Not Appear in, and Cannot Reasonably Be Implied from, the Article.**

HuffPost cannot be liable for defamation based on statements it did not actually publish or imply. *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 863 (Tex. App.—Houston [14th Dist.] 2017). Courts can determine whether content supports an alleged implication as a matter of law at the pleading stage. *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 632 (2018) ("[I]mplications can be ambiguous . . . But . . . The same rule that allows courts to determine meaning as a matter of law allows them to determine communicative content as a matter of law"); *see also Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1007 (S.D. Tex. 2018) (courts can determine defamatory implication as a matter of law). The standard is whether an "objectively reasonable reader" would draw the alleged implication from the publication. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

Contrary to the FAC's suggestion, the Article does *not* state that Plaintiff is a "white supremacist" or a "Neo-Nazi" or expressly call him anti-Semitic. *Compare* FAC ¶ 10; *with* Ex. 1. Additionally, the content of the Article does not support Plaintiff's allegation that HuffPost implies Plaintiff advocates "[a] plot for genocide against non-whites and/or Jews or utilization of DNA or genetic technology to their detriment." FAC ¶ 11. The Article merely quotes Rep. Roe's spokesperson statement that Plaintiff "advocated for more publicly-available sequenced

---

dispute. *Condit*, 317 F. Supp. 2d at 357. Exhibits 2-6 are also articles "about [the plaintiff] that appear[] on [various news sites and blogs] . . . [of] which the court [i]s entitled to take judicial notice." *Trout Point Lodge*, 729 F.3d at 490 n.12; *see also Biro*, 963 F. Supp. 2d at 271 n.9) ("the Court can take judicial notice of articles written by and about [the plaintiff]"). Further, the articles are electronically attached (via hyperlink) to the article which the FAC alleges is defamatory, FAC ¶ 7, making them "incorporated by reference" to the FAC. *Ferguson*, 802 F.3d at 780 (courts can consider documents incorporated by reference to complaints). HuffPost respectfully requests that the Court take judicial notice of Exhibits 2-6.

genomes." *See* Ex. 1. It does not imply that Plaintiff advocates genocide. The Article then goes on to discuss how "[s]ome white nationalists"—without naming Plaintiff—take a strong interest in "genetics" and "have been flocking to genetic ancestry sites to prove their white heritage." *Id.* As a matter of law, there is no reasonable implication anywhere in the Article that Plaintiff advocates genocide.

In *Cox Media Group*, the Fourteenth Court of Appeals rejected a defamation plaintiff's contention that "juxtapose[d] paragraphs" created the implication that the plaintiff—a doctor—ran a "pill mill," where other parts of the article at issue discussed other doctors who were in fact involved in pill mills. 524 S.W.3d at 863. The court found that though the article at issue "includes a section that discusses Texas's 'pill mill' law," the plaintiff "is not mentioned in this part of the article." *Id.* Similarly, here, the paragraph of the Article discussing genetic ancestry does not discuss Plaintiff. *See* Ex. 1. But even if it did, the Article's reference to white nationalists "flocking to genetic ancestry sites to prove their white heritage" does not, as a matter of law, reasonably give the impression that Plaintiff advocates genocide. *See id.*; FAC ¶ 11.

In sum, Plaintiff's libel claim cannot rest on allegations that HuffPost called Plaintiff a "white supremacist" or "Neo-Nazi" or anti-Semitic because HuffPost did not publish such statements. Furthermore, Plaintiff's libel claim cannot rest on the alleged implication that Plaintiff advocates genocide because that implication is not reasonable as a matter of law. *Tatum*, 554 S.W.3d at 632 (courts evaluate allegedly defamatory implications as a matter of law in the first instance). Tellingly, Plaintiff did not allege that the Article implies Plaintiff advocates genocide until *after* HuffPost argued the Article is not actionable in its original motion to dismiss. *Compare* ECF No. 1 *with* ECF No. 20. The genocide "implication" allegation is a last-ditch pivot that should be rejected.

### B.      The Article Conveys Constitutionally-Protected Opinions.

Even if the FAC accurately quoted and described the HuffPost Article's statements—which it does not—the statements Plaintiff complains of would amount to nonactionable opinion, warranting dismissal as a matter of law.  The U.S. Supreme Court has made clear that the First Amendment limits libel plaintiffs to complaints about defamatory **_facts_**.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).  Statements that "cannot reasonably [be] interpreted as stating **_actual facts_** about an individual" are not actionable.  497 U.S. at 20 (emphasis added; *quoting Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988)).  Rhetoric, hyperbole, figurative language, and subjective impressions created by a publication all are constitutionally protected.  *Greenbelt Publ. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970).  Particularly "when the facts underlying an opinion are set out in the publication itself[,]" that opinion cannot form the basis of a defamation action in Texas.  *Brewer v. Capital Cities/ABC, Inc.*, 986 S.W.2d 636, 643 (Tex. App.—Fort Worth 1998, no pet.).  "Defamation law should not be used as a threat to force individuals to muzzle their truthful, reasonable opinions and beliefs."  *Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556 (5th Cir. 1997).  The line between privileged opinion and actionable assertions of fact is a question of law for the court.  *Einhorn v. LaChance*, 823 S.W.2d 405, 411 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.).

Courts in Texas have held that statements similar to the allegedly defamatory statements in the Article are non-actionable.  The Fifth Circuit, applying Texas law, held in *Jones v. Compass Bancshares, Inc.* that stating a person was screaming and using obscenities is not defamatory as a matter of law because it is "subjective."  339 Fed. Appx. 410, 412 (5th Cir. 2009).  The court explained: "the word 'obscene' is, by its nature, an indefinite or ambiguous individual judgment that rests solely in the eye of the beholder."  In *El Paso Times, Inc. v. Kerr*, the court held that a statement that the plaintiff, a prosecutor, had "cheated" during a prosecution

was nonactionable opinion.  706 S.W.2d 797, 798-99 (Tex. App.—El Paso 1986, writ ref'd n.r.e.).  The court turned to the dictionary for a definition of "cheat" and found that it "has no unique definition . . .  It means different things to different people at different times and in different situations."  As such, the court was "unable to construe the 'cheating' language as a factual assertion that [plaintiff] cheated."  *Id.*  And, in *Harvest House Publishers v. The Local Church*, a publication that labeled a church as a "cult" was not liable for defamation because the "truth or falsity" of such a statement depends on the subjective views of the reader.  190 S.W.3d 204, 212 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

Here, similar to stating that a person used obscenities, describing a prosecutor as having "cheated," or calling a church a "cult," the Article makes statements of opinion which have no precise meaning in reference to Plaintiff.  *See Jones*, 339 Fed. Appx. at 412; *El Paso Times*, 706 S.W.2d at 798-99; and *Harvest House*, 190 S.W.2d at 212.  Just like the word "cheated" in *El Paso Times*, here, "racist," "white supremacist," "white nationalist", "Holocaust denier," and similar terms can "mean[] different things to different people at different times and in different situations."  706 S.W.2d at 798-99.  And like the word "obscene" used in the statement at issue in *Jones*, the meaning of the terms Plaintiff cites could only be determined based on "individual judgment that rests solely in the eye of the beholder."  339 Fed. Appx. at 412.  A determination of whether a person is a "racist," "white supremacist," "white nationalist" or "Holocaust denier" can also be likened to an assessment of whether a church constitutes a "cult," which the court in *Harvest House* properly observed was a matter of one's personal opinion, and could not support a defamation claim.  190 S.W.2d at 212.

Courts around the country have held that the very types of statements Plaintiff alleges are defamatory constitute nonactionable opinion as a matter of law.  Calling a person "racist" or

10

suggesting that they hold racially discriminatory views is widely regarded as a statement of opinion that cannot support a defamation claim.[8]  Also, calling a person a white nationalist and a "leader" of the Ku Klux Klan is a non-actionable statement of opinion.  *Edwards v. Detroit News, Inc.*, 910 N.W.2d 394, 403-04 (Mich. App. 2017) ("defendants' use of the term 'leader' [of the Ku Klux Klan] was ambiguous and could plausibly be understood to mean different things to different readers").  Rather than being actionable as defamation, insinuating that someone is a Nazi is "understood not as a statement of fact but as a slur against a political opponent . . . [that] must be classified as opinion, nothing more."  *Koch v. Goldway*, 817 F.3d 507, 509-510 (9th Cir. 1987).  Courts have also rejected the argument that "Holocaust denier" is a factually-verifiable assertion.  *Leichty v. Bethel College*, No. 19-1064, 2019 WL 5549167, at *10 (D. Kan. Oct. 28, 2019).  The plaintiff in *Leichty* argued instead that while he had a "revisionist view" about the Holocaust, he did not deny that genocide occurred, very similarly to Plaintiff's statements here.  Ex. 4.  The court in *Leichty* rejected this argument: "whether Plaintiff's 'revisionist view' could be considered a 'denial' or made him a 'denier' of a historical event was, under such circumstances, a matter of personal opinion."  2019 WL 5549167, at *10.

---

[8] *See, e.g.*, *Raible v. Newsweek, Inc.*, 341 F. Supp. 804, 806-07 (W.D. Pa. 1972) ("To call a person a bigot or other appropriate name descriptive of his political, racial, religious, economic, or sociological philosophies gives no rise to an action for libel"); *Buckley v. Littell*, 539 F.2d 882, 895 (2d Cir. 1976) ("what constitutes an 'openly fascist' journal is much a matter of opinion . . . as is the question what constitutes 'fascism' or 'the radical right'"); *Russell v. Davies*, 948 N.Y.S.2d 394 (2012) (statements labeling a political candidate's remarks as "racist" and "anti-Semitic" were protected opinion based on disclosed facts); *Ratajack v. Brewster Fire Dep't, Inc.*, 178 F. Supp. 3d 118, 165 (S.D.N.Y. 2016) (a speaker's "articulated concerns that Plaintiff was a racist or a future threat to others[] is nonactionable opinion"); *Garrard v. Charleston Cnty. School District*, 838 S.E.2d 698, 714 (Ct. App. S.C. 2019) ("whether something is racist is a matter of opinion"); *Covino v. Hagemann*, 627 N.Y.S.2d 894, 897-898 (1995) ("The court is not in a position to give its imprimatur to one view or the other; thus the phraseology used is one of opinion"; and "How does one empirically measure 'racial sensitivities'?  It is a concept for which reasonable people might differ"); *Forte v. Jones*, No. 1:11-cv-0718, 2013 WL 1164929, at *6 (E.D. Cal. Mar. 20, 2013) ("'racist' has no factually-verifiable meaning").

Other courts have similarly held that "anti-Semitic" is "non-actionable opinion."  *See*, *e.g.*, *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 509 (S.D.N.Y. 2012).  As a matter of law, the challenged statements in this case—even if the FAC accurately quoted or described them, which HuffPost disputes—are not capable of a verifiable factual meaning.  They are constitutionally protected opinions that cannot support a libel claim.[9]

### C.   Even if the Allegedly Defamatory Statements Supported a Verifiably Factual Meaning—Which They Do Not—The Gist of the Article is Substantially True.

The Article's statements about Plaintiff are also not capable of supporting a claim for defamation because they are substantially true.  Even if a statement contains minor inaccuracies, it is protected and not subject to defamation liability if "the substance, the gist, the sting, of the libelous charge be justified."  *Masson v. The New Yorker*, 501 U.S. 496, 516 (1991).  This means that "the defamation, as published, would [not] affect the mind of the reader or listener in a different manner than would the [truth]."  *Wehling v. Columbia Broadcasting Sys.*, 721 F.2d 506, 509 (5th Cir. 1983).  If "the allegedly defamatory statement is not more damaging to the plaintiff's reputation, in the mind of the average person, than the truthful statement[,]" then the statement is not actionable.  *Green v. CBS, Inc.*, 286 F.3d 281, 283 (5th Cir. 2002).

According to Plaintiff, the "gist" of the Article is that "Plaintiff is anti-Semitic and a white supremacist."  ECF No. 27 at 6.  HuffPost maintains that these sentiments are non-actionable matters of opinion that carry no precise factual meaning, and therefore cannot support

---

[9] Moreover, Plaintiff cannot base a defamation claim on opinions where the defendant discloses factual bases for those opinions.  *See*, *e.g.*, *Brewer*, 986 S.W.2d at 643 (noting that especially where the facts giving rise to an opinion are set forth in the publication itself, the statement of opinion cannot support a defamation claim).  The Article at issue provides support for its statements about Plaintiff, including hyperlinking sources and facts that Plaintiff does not directly dispute.  *See* Exs. 1-6.  Because the Article makes clear the facts underlying the statements of opinion, this provides *further* constitutional protection.  Even if he disputed the underlying factual bases, the alleged statements are still constitutionally-protected opinions.

a libel claim.  But even if these statements are assessed as though they represent verifiable facts, Plaintiff's libel claim still fails as a matter of law because the "gist" of the Article, even as described by Plaintiff, is substantially true.  *See Masson*, 501 U.S. at 516.

It is true that the SPLC—a prominent nonprofit that tracks extremist groups—considers Plaintiff a white nationalist, which is what the Article reports.  Exs. 1, 2, 3.  Indeed, several of his own statements, which the Article hyperlinks and which Plaintiff does not specifically deny making, are simply racist.  *See* Exs. 2-6.  The suggestion that other races are "dumber" than whites is, by definition, an expression of white supremacism.  Ex. 2.  And it is anti-Semitic and Holocaust denialism to claim millions of Jews were not murdered in gas chambers.  Exs. 1, 4. Even his FAC conspicuously skirts around acknowledging that six million people were killed in gas chambers in the Holocaust, instead evasively stating Plaintiff "believes that there was a systematic campaign to commit atrocities against Jewish people during the Second World War." FAC ¶ 6.  The Court need not decide whether Plaintiff is a "racist," an "anti-Semite," or a "white nationalist" because these terms are matters of constitutionally-protected opinion.  But if Plaintiff insists these are factual, verifiable terms, the Court cannot avoid the obvious:  Plaintiff's own statements expose him as a racist, an anti-Semite, and a white nationalist.

### D.      The Article Is Protected Under Tex. Civil Practice & Remedies Code § 73.005.

Section 73.005(b) of the Texas Civil Practice and Remedies Code ("Section 73.005(b)") provides that "[i]n an action brought against a newspaper or other periodical or broadcaster, the defense [of truth] . . . applies to an accurate reporting of allegations made by a third party regarding a matter of public concern."

Texas courts have repeatedly applied Section 73.005(b) to protect the media's reporting of third-party allegations, even where the plaintiff disputed the accuracy of the underlying allegations.  In *Dallas Morning News*, the court held that a statement that the plaintiff was "under

13

investigation" did not constitute libel by implying the plaintiff had broken the law because Section 73.005(b) protected the report of third-party allegations.  579 S.W.3d at 381-382.  The standard is whether the report of third-party allegations is substantially true, and "the plaintiff has the burden . . . to show falsity at the motion to dismiss stage."  *Id.* at 380; *see also Twombly*, 550 U.S. at 555 (plaintiff must allege facts sufficient to establish the plausibility of the claims asserted "above the speculative level").  Moreover, the Supreme Court of Texas has recognized that where an allegedly defamatory article "qualifie[s] [statements] with pervasive sourcing language," the article is poised to receive Section 73.005 protection.  *Id.* at 381.[10]

Here, the subject of the Article is a matter of public concern, as it centers on matters of national politics and Plaintiff's attempt to influence them.  *See* Ex. 1; *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) ("speech 'deals with matters of public concern when it can be fairly considered as relating to *any* matter of political, social, or other concern to the community'") (emphasis added); *see also Charles v. Tex. Lottery Comm'n*, No. A-06-CA-158, 2006 WL 3358420, at *4 (W.D. Tex., Nov. 17, 2006) (discussing the fact that "alleged institutionalized race discrimination [is], almost needless to say, [a] matter[] of public concern").

The Article reports accurately on third-party statements about Plaintiff.  *See* Exs. 1-6. For instance, the Article states that Plaintiff is "widely known as a white nationalist . . . *according to the [SPLC].*"  *Id.* (emphasis added).  That is how the SPLC describes Plaintiff in the hyperlinked report.  Ex. 2.  The Article also repeats the reports of several other sources, hyperlinking those third parties throughout and using "pervasive sourcing language," for the

---

[10] Hyperlinking sources within an article can be considered "sourcing."  *See*, *e.g.*, *Adelson v. Harris*, 133 Nev. 512, 518 (Nev. 2017) (finding that "hyperlink[s] function[] like a footnote," and as such they serve as "specific, active, and accurate attribution"); *Gubarev v. Buzzfeed, Inc.*, 340 F. Supp. 3d 1304, 1318-1319 (S.D. Fla. 2018) (where a hyperlink in a document at issue is "conspicuous," "[a]nalysis [of it] d[oes] not require facts beyond those already in the record").

statements that Plaintiff questions how many people were killed in the Holocaust, that he ran a crowdfunding site for white supremacists and Neo-Nazis, and that he was banned from Twitter for threatening to "take out" a Black Lives Matter activist.  *See* Exs. 1-6; *Dallas Morning News*, 579 S.W.3d at 381.  Aside from general allegations of falsity, Plaintiff makes no attempt to show that the Article's reporting on these sources is not substantially true, which is his burden at the pleadings stage.  *Dallas Morning News*, 579 S.W.3d at 380.  HuffPost is therefore entitled to the protection of Section 73.005(b), and the Court can apply Section 73.005(b) as an independent basis to dismiss Plaintiff's FAC.

> ### E.     Plaintiff is a Public Figure Who Must Adequately Plead Actual Malice, Which He Failed to Do.

The Court need not reach the actual malice issue, because HuffPost's other arguments in support of dismissal each independently demonstrate the FAC's failings as a matter of law.  However, as a further alternative basis, Plaintiff's FAC can be dismissed for failure to adequately plead actual malice.  *Walker v. Beaumont Ind. Sch. Dist.*, 938 F.3d 724, 744 (5th Cir. 2019) ("actual malice [is] a required element for public figure plaintiffs").  Plaintiff's already-amended pleading contains only conclusory and inapposite allegations of actual malice.

As a result of his prominent role in conservative politics and his deliberate engagement with the media on these topics, Plaintiff is at least a limited-purpose public figure who must plausibly plead actual malice.  Courts regularly dismiss public figures' defamation claims at the Rule 12(b)(6) stage, particularly in cases involving hot-button political controversies.  *See*, *e.g.*, *Fairbanks v. Roller*, 314 F. Supp. 85, 93 (D.D.C. 2018) (dismissing defamation case for lack of actual malice "[e]specially given the public debate about the [politically-controversial, white power] 'okay' hand gesture at the time," which was at the center of the defamation claim).  This Court should do the same.  Plaintiff does not plead plausible facts to support an allegation that,

with respect to any supposed falsity in HuffPost's reporting (which HuffPost disputes), HuffPost knew of such supposed falsity or that they somehow acted with reckless disregard of its truth.

### 1.   Plaintiff Is, at a Minimum, a Limited-Purpose Public Figure.

A limited-purpose public figure is someone who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).  Under Fifth Circuit precedent, a three-part test applies in determining this status:  (1) the controversy at issue must be public "both in the sense that people are discussing it and . . . are likely to feel the impact of its resolution;" (2) the plaintiff must participate in the controversy in more than a trivial role; and (3) the alleged defamation must be related to the plaintiff's participation in the controversy. *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433-34 (5th Cir. 1987).

Plaintiff is at a minimum a limited-purpose public figure.  Plaintiff's FAC describes him as "admittedly involved with conservative political causes."  FAC ¶ 6.  Plaintiff's public appearances and widely-reported-on statements on social media ***before publication of the Article*** cement this status as he discussed controversial alt-right politics and racially motivated rhetoric. Exs. 2-5; *see Collins v. WAFB, LLC*, No. 16-15648, 2017 WL 1383948, at *3 (E.D. La. Apr. 18, 2017) ("The Fifth Circuit has . . . identified categories of speech that constitute matters of public concern, including, for example, associating with political organizations. . . speech made against the backdrop of ongoing commentary and debate in the press, or speech relating to racial discrimination" (internal brackets and quotation marks omitted)); *cf. Brueggemeyer v. Am. Broadcasting Co.*, 684 F. Supp. 452, 458 (N.D. Tex. 1988) (plaintiff was limited-purpose public figure because he "'voluntarily engaged in a course of conduct … bound to invite attention and

16

comment'" (quoting *Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859, 861 (5th Cir. 1978))).[11]

As the Texas Court of Appeals recognized in *Mohamed v. Center for Security Policy*, media appearances like Plaintiff's transform a private figure into a limited-purpose public figure, as they reflect a deliberate choice "to engage in activities that involve[] increased public exposure and media scrutiny[.]"  554 S.W.3d 767, 775 (Tex. App.—Dallas 2018, pet. denied); *see also Chevalier v. Animal Rehab. Ctr., Inc.*, 839 F. Supp. 1224, 1234 (N.D. Tex. 1993) (holding that plaintiff was limited-purpose public figure under *Trotter* test because he "actively participated in the controversy by appearing on television and giving interviews").  And like the plaintiff in *WFAA-TV, Inc. v. McLemore*, who voluntarily made media-facing statements about a public controversy (the success of a Bureau of Alcohol, Tobacco, and Firearms raid on a religious sect compound) and was considered a public figure, here, Plaintiff has voluntarily put himself at the center of a controversial discussion.  978 S.W.2d 568, 572 (Tex. 1998). [12]

---

[11] The wide coverage of Plaintiff's public views predates the controversy at issue in the Article, *see, e.g.*, Exs. 2-6, rendering irrelevant Plaintiff's allegation that he is not a public figure simply because Reps. Roe and Harris did not previously know of Plaintiff's reputation.  *See* FAC ¶ 12.

[12] The controversy over alt-right interest in DNA sequencing and genetics has raged for years. *See, e.g.*, *The Atlantic*, "Will the Alt-Right Promote a New Kind of Racist Genetics?" December 29, 2016, available at https://www.theatlantic.com/science/archive/2016/12/genetics-race-ancestry-tests/510962/; *Vice*, "Alt-right trolls are getting 23andme genetic tests to 'prove' their whiteness," October 8, 2016, available at https://www.vice.com/en_us/article/vbygqm/alt-right-trolls-are-getting-23andme-genetic-tests-to-prove-their-whiteness.  In this context, Plaintiff's meeting with lawmakers drew widespread attention, highlighting the controversial nature of the subject matter.  *See, e.g.*, *Slate*, "Two Republican Congressmen Met With a Holocaust Denier About DNA 'Research'," January 17, 2019, available at https://slate.com/news-and-politics/2019/01/republican-congressmen-holocaust-denier-dna-genetics.html; *The Hill*, "Activist who met with GOP lawmakers also promotes 'black violence' gene: report," January 17, 2019, available at https://thehill.com/blogs/blog-briefing-room/news/425961-gop-congressmen-discussed-genetics-with-an-alt-right-activist; *NBC News*, "Activist who met with congressman about 'DNA' posted about black 'violence gene'," January 17, 2019, available at https://www.nbcnews.com/politics/congress/activist-who-met-congressmen-about-dna-posted-about-black-violence-n959931.

### 2.   Plaintiff Fails to Plausibly Allege Actual Malice.

Plaintiff's factual allegations fall far short of satisfying his burden on actual malice.  To meet First Amendment standards, a plaintiff must make a clear and convincing showing that, at the time of publication, the defendant actually knew its statement was false or acted with reckless disregard of its truth.  *Peter Scalamandre*, 113 F.3d at 560.  A publisher acts with reckless disregard when it "entertain[s] serious doubts as to the truth of [the] publication" or has a "high degree of awareness of . . . probable falsity."  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (citation omitted).  This is a "'daunting,'" difficult-to-meet standard.  *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 590 (D.C. Cir. 2016).

The standard is no less "daunting" at the Rule 12(b)(6) stage, where a public-figure plaintiff must allege *facts* that would plausibly support a finding of actual malice.  Allegations offering "labels and conclusions" or parroting the legal standard are insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Several circuit courts explicitly hold that the *Iqbal* rule against conclusory allegations applies to pleading actual malice.  *Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) ("Every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice" (internal quotation marks and brackets omitted)).[13]

Plaintiff's FAC attempts to allege actual malice by parroting the legal standard.  FAC ¶¶

---

[13] *See also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701-702 (11th Cir. 2016) (holding that plaintiff must allege *plausible* facts supporting a finding of actual malice); *Biro v. Conde Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015) (the "plausibility standard [for federal pleading] applies to pleading intent" for purposes of actual malice supporting a defamation claim); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012) ("[a]pplying the *Iqbal* standard" and dismissing claim for failure to plead actual malice); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012) (same).

13-14. Courts have consistently held that this is insufficient to satisfy a public figure's actual malice pleading burden. *See*, *e.g.*, *Michel*, 816 F.3d at 703-04 ("[W]e can disregard the portions of the complaint where [plaintiff] alleges in a purely conclusory manner that the defendants were 'reckless'"); *Schatz*, 669 F.3d at 56 ("[plaintiff's] complaint used actual-malice buzzwords . . . But these are merely legal conclusions, which must be backed by well-pled facts"). Plaintiff's actual malice "buzzwords" do not meet the required level of pleading. *See* FAC ¶ 13.

Plaintiff's more specific allegations of actual malice, FAC ¶ 13, even if taken as true, are also insufficient. First, Plaintiff's allegations that HuffPost failed to investigate the subject of the Article or interview Plaintiff, FAC ¶ 13(a, b), are insufficient as a matter of law to establish actual malice. Courts have consistently rejected the idea that an investigation is necessary. *See St. Amant*, 390 U.S. at 733 ("Failure to investigate does not in itself establish" actual malice); *Hearst Corp. v. Skeen*, 159 S.W.3d 633, 637 (Tex. 2005) (same); *Harte-Hanks Commun., Inc. v. Connaughton*, 491 U.S. 657, 665 (1989) (even an "*extreme departure* from professional standards is insufficient to prove actual malice") (emphasis added). Second, Plaintiff's allegation of HuffPost's "injurious motive" toward Plaintiff, FAC ¶ 13(c), is irrelevant and insufficient, as even credible allegations of ill will or bias do not amount to actual malice. The Supreme Court of Texas has ruled clearly on this point, stating that "actual malice concerns the defendant's attitude toward the truth, not toward the plaintiff." *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 165 (Tex. 2004); *see also Peter Scalamandre*, 113 F.3d at 561 (allegation that defendant disliked plaintiff did not support finding of actual malice).[14] Third, Plaintiff's allegation that HuffPost published a "clarification" to the Article, FAC ¶ 13(d) – in actuality, it

---

[14] *See also Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 317 (5th Cir. 1995) ("Malice is not implied or presumed from the mere fact of publication, nor may it be inferred alone from the character or vehemence of the language used, nor found from the falsity of the statement alone.").

was an update promptly added following a statement from Plaintiff's counsel – supports a *lack* of actual malice as courts have held that readiness to correct, clarify or retract negate a finding of actual malice.[15]  Plaintiff's FAC does not adequately allege actual malice, and the libel claim should be dismissed for this additional reason.

## V.    CONCLUSION

For the reasons set forth in this motion, and subject to their motion to dismiss for lack of personal jurisdiction, HuffPost respectfully requests that the Court grant this motion, dismiss the FAC and enter judgment in HuffPost's favor.  Moreover, any request for leave to amend further would be futile and should be denied.[16]

DATED:  April 23, 2020                      Respectfully submitted,


                                            /s/ *Jean-Paul Jassy*
                                            Jean-Paul Jassy

                                            Jean-Paul Jassy (Admitted *Pro Hac Vice*)
                                            William T. Um (Admitted *Pro Hac Vice*)
                                            Elizabeth Baldridge (Admitted *Pro Hac Vice*)
                                            JASSY VICK CAROLAN LLP
                                            800 Wilshire Boulevard, Suite 800
                                            Los Angeles, CA 90017
                                            Telephone: (310) 870-7048
                                            Facsimile: (310) 870-7010
                                            jpjassy@jassyvick.com

---

[15] *See Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir. 1987) ("[a] readiness to retract [or correct] tends to negate 'actual malice'"); *New Times*, 146 S.W.3d at 166 (a defamation defendant's "labeling and clarification . . . as well as its explanatory responses to readers, evidence a lack of actual malice").

[16] Further amendment in the face of HuffPost's arguments would be futile.  No amendments can change that the implications are unreasonable, the challenged statements are opinion, substantially true and/or are protected by Section 73.005.  *See, e.g.*, *Partington v. Bugliosi*, 56 F.3d 1147, 1162 (9th Cir. 1995) (affirming dismissal of defamation claim without leave to amend where allegedly defamatory statements were held to be nonactionable opinion).  And no further amendment should be permitted to plead actual malice.  *See Arpaio v. Zucker*, 414 F. Supp. 3d 84, 93-94 (D.D.C. 2019) (dismissing defamation case without leave to amend for failure to adequately plead actual malice); *Fairbanks*, 314 F. Supp. 3d at 95 (same).

wum@jassyvick.com
ebaldridge@jassyvick.com

Patrick W. Mizell
ATTORNEY IN CHARGE
Texas Bar No. 14233980
Federal ID No. 36390
VINSON & ELKINS L.L.P.
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone: (713) 758.3882
Facsimile: (713) 615.5493
pmizell@velaw.com

Marc A. Fuller
Texas Bar No. 24032210
Federal ID No. 2035080
Megan M. Coker
Texas Bar No. 24087323
Federal ID No. 178550
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Telephone: (214) 220-7700
mfuller@velaw.com
megancoker@velaw.com

*Attorneys for Defendant TheHuffingtonPost.com*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 23, 2020, copy of the above and foregoing has been filed electronically with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Elizabeth Baldridge*
Elizabeth Baldridge