IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHARLES JOHNSON, | ) |
|     Plaintiff, | ) ) ) |
| v. | ) )   Case No. 4:20-cv-00179 |
| THEHUFFINGTONPOST.COM, INC.,, | ) )   **JURY DEMANDED** |
|     Defendant. | ) ) ) |

**RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

Plaintiff Charles Johnson ("Johnson" or "Plaintiff") hereby responds to Defendant TheHuffingtonPost.com, Inc.'s ("HuffPost" or "Defendant") Motion to Dismiss First Amended Complaint for Lack of Personal Jurisdiction ("Motion", Doc. 32) and would respectfully show the Court as follows:

**DEFENDANT HAS WAIVED/CONSENTED TO JURISDICTION**

Even when the defendant makes a timely challenge to personal jurisdiction, the defense can be waived if the defendant's conduct leading up to the challenge is inconsistent with its claim that personal jurisdiction is lacking. *See PaineWebber Inc. v. Chase Manhattan Private Bank*, 260 F.3d 453, 460 (5th Cir. 2001). Here, in its FRCP 12(b)(6) Motions to Dismiss [Docs. 20 and 33] seeks to invoke a statutory defense from the Texas Civil Practice & Remedies Code. *See* Doc. 20 at pp. 12-15; Doc. 33 at pp. 13-15. In doing so, Defendant agrees that Texas law applies. But Texas law can

1

only apply if the Defendant's conduct has sufficient connection to Texas to constitute minimum contacts and purposeful availment.  As such, Defendant's simultaneous attempt to invoke Texas law—while arguing that Texas has no jurisdiction—is sufficient to constitute a waiver of the personal jurisdiction defense.  Accordingly, the Court should deny the Motion on this basis alone.

## THE JURISDICTIONAL ALLEGATIONS AND CONTRAVENING EVIDENCE

Plaintiff has filed an Amended Complaint [Doc. 25], which is the live pleading.  In the Amended Complaint, Plaintiff does not contend that personal jurisdiction over HuffPost is grounded on general jurisdiction.  *See id.* at ¶ 4.  Therefore, Defendant's Motion on this issue is moot.  In the Amended Complaint, Plaintiff clarifies its allegations that support this Court's exercise of specific jurisdiction as follows:

> Defendant regularly conducted its online publishing and other business through its website in Texas through www.HuffPost.com (the "Website") and derives substantial revenue from its subscription, sales, and advertising by servicing the Texas market through the Website and the Article complained of herein was published on the same Website.  Moreover, by publishing "news" stories on its Website, Defendant attracts subscribers, advertisers, and customers who purchase merchandise and services.  Defendant offers paid subscriptions to Texas residents and tracks the location and activities of Texas residents on the Website thereby enabling targeted advertising to Texas residents that generate substantial revenue for Defendant.  Defendant sells merchandise and services on the Website to Texas residents and generates substantial profits from these sales.  Defendant has actually entered into contracts for subscriptions to its online subscription services with Texas residents through its Website.  Defendant has actually entered into contracts with advertisers in Texas to advertise on its Website and/or ran advertisements on its Website geared to the Texas market.  Defendant has actually sold merchandise and services through its Website to Texas residents.  These are sufficient minimum contacts with Texas from which the conduct complained of arises because the article was published on the same Website the HuffPost offers and obtains paid subscriptions to Texas residents, targets paid advertising toward Texas residents, and offers and sells merchandise and services to Texas residents.  Based on this conduct, Defendant has purposefully availed itself of the privileges of doing business in Texas through online publishing, marketing, and sales to Texas residents and to exercise jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

*See id.* at ¶ 4.

The Court must accept these jurisdictional allegations as true and resolve any factual conflicts in favor of the plaintiff to the extent they are not controverted in the Motion.  *See Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000).  Shockingly, for example, in its Motion, Defendant provides absolutely <u>no evidence</u> to rebut the following jurisdictional allegations:

2

> Defendant regularly conducted its online publishing and other business through its website in Texas through www.HuffPost.com (the "Website") and derives substantial revenue from its subscription, sales, and advertising by servicing the Texas market through the Website and the Article complained of herein was published on the same Website. Moreover, by publishing "news" stories on its Website, Defendant attracts subscribers, advertisers, and customers who purchase merchandise and services. Defendant offers paid subscriptions to Texas residents and tracks the location and activities of Texas residents on the Website thereby enabling targeted advertising to Texas residents that generate substantial revenue for Defendant. Defendant sells merchandise and services on the Website to Texas residents and generates substantial profits from these sales. Defendant has actually entered into contracts for subscriptions to its online subscription services with Texas residents through its Website. Defendant has actually entered into contracts with advertisers in Texas to advertise on its Website and/or ran advertisements on its Website geared to the Texas market. Defendant has actually sold merchandise and services through its Website to Texas residents.

Doc. 25 at ¶ 4.

And this is the entirety of Plaintiff's allegations for jurisdiction. The only contravening evidence tendered by Defendant are the Declarations of Andy Campbell ("Campbell", the author of the Article) and Victor Brand ("Brand", an editor with HuffPost).

Campbell's testimony centers on whether the author he knew Plaintiff resided in Texas or made contact with Texas in connection with researching or writing the Article. *See* Doc. 34. This testimony is irrelevant (as are Defendant's legal arguments in this respect) because Plaintiff does not rely on the "effects" test or solely based on Plaintiff's residence in the *Calder* line of cases as argued in the Motion. *See* Motion at pp. 7-10. Therefore, Campbell's declaration has no import to jurisdictional question, which is solely based on a *Zippo* analysis.

Brand merely offers testimony that HuffPost does not maintain a physical presence in Texas and that supposedly "only" 8% of the online "hits" that read the Article were from Texas. *See* Doc. 32-2. This is not relevant to any of the jurisdictional allegations and the critical *Zippo* analysis (the controlling law for whether personal jurisdiction can be exercised based on an online presence) discussed below. The only thing remotely approaching *Zippo*-related subject matter is Brand's statement that he is "not aware of any class of goods or services" that HuffPost is a "lead supplier" of in Texas. *Id.* at ¶ 3. Of course, Brand is merely an editor and does not even purport to have personal knowledge of the interactivity of the Website or the revenue derived from it, so this testimony does

3

not contravene the jurisdictional allegations. Brand merely testifies that he is "not aware" of these facts. It is unclear even what this means or what a "lead supplier" is, but, once again, this does not rebut the jurisdictional allegations that HuffPost transacts significant business and revenue through and related to its Website in Texas. There is no requirement that a defendant be a "lead supplier" (whatever that means) of a good or service in a state to be subjected to personal jurisdiction. The contravening evidence tendered in the Motion thus does nothing whatsoever to combat the jurisdictional allegations and the Court must accept them all as true.

Plaintiff otherwise responds to the contentions made in the Motion as follows:

## ARGUMENT AND AUTHORITIES

A defendant may challenge a court's jurisdiction over his person by moving for dismissal under Rule 12(b)(2) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(b)(2); *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 395 (5th Cir. 2009). If a defendant does so, the plaintiff bears the burden to make a *prima facie* case that the court has jurisdiction over the defendant. *Johnston v. MultidataSyst. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). A *prima facie* showing of personal jurisdiction may be established by the pleadings, depositions, affidavits, or exhibits of record. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999).

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the forum state's long-arm statute, and (2) to the extent permitted by the due process clause of the Fourteenth Amendment. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012). Because the Texas long-arm statute is coextensive with the limits of federal due process, this Court need only address whether the exercise of jurisdiction over a defendant comports with the requirements of the Fourteenth Amendment. *Mullins*, 564 F.3d at 398.

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal

4

jurisdiction over a nonresident defendant when (1) the defendant has "purposefully availed itself of the benefits and protections of the forum by establishing 'minimum contacts' with the forum state," and (2) the exercise of personal jurisdiction over the defendant aligns with "traditional notions of fair play and substantial justice."[1] *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000); *International Shoe Co v. Washington*, 326 U.S. 310, 316 (1945).

The first prong, referred to as the "minimum contacts" requirement, may be satisfied if the controversy is "related to" or "arises out of" the nonresident defendant's contacts with the forum. *Alpine View*, 205 F.3d at 215. To establish specific jurisdiction over a defendant, a plaintiff must show: (1) there are sufficient contacts between the defendant and the forum; (2) the contacts were purposefully established by the defendant; and (3) the plaintiff's cause of action arises from or is related to the defendant's forum contacts. *Pervasive Software*, 688 F.3d at 221. "'[I]t is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the privileges and benefits of the forum's laws.'" *Id.* at 222 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The "purposeful availment" requirement ensures that a nonresident defendant will not be subject to jurisdiction solely as a result of the unilateral activity of another party. *Id.*

Plaintiff's claim arises entirely from a publication by Defendant on its interactive website, www.HuffPost.com (the "Website") at https://www.huffpost.com/entry/gop-reps-host-chuck-johnson-holocaust-denying-white-nationalist_n_5c40944be4b0a8dbe16e670a. *See* Doc. 25 at ¶¶ 7-

---

[1] Defendant makes no argument in this regard and, therefore, Plaintiff need not and will not address this prong in this Response. Moreover, there is simply no evidence Defendant—a major global media outlet—would be prejudiced or unduly burdened by defending this suit in Texas or that Texas does not have an interest in adjudicating this suit. As such, in light of minimum contacts recited herein, Defendant has failed to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

5

15. As discussed in detail below, the Website provides sufficient minimum contacts for specific jurisdiction in this case and, as pointed out above, Defendant makes absolutely zero effort to rebut the jurisdictional allegations regarding Defendant's website for *Zippo* purposes.

> **I.    The *Zippo* Analysis Clearly Shows There Is Personal Jurisdiction**.

To assess whether contacts over the internet should subject a nonresident defendant to jurisdiction, the Fifth Circuit has adopted the analysis used in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). *See Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (adopting *Zippo* analysis). *Zippo* established three categories of websites based on the website's level of interactivity and "prescribed a different jurisdictional result for each of the three categories of websites[.]" *Construction Cost Data, L.L.C. v. Gordian Group, Inc.*, No. 4:16-CV-114, 2016 WL 10951769, at *3 (S.D. Tex. July 22, 2016).

At one end of the spectrum, when a website consists of nothing more than "passive advertisement," the court should not exercise jurisdiction. *Mink*, 190 F.3d at 336. At the other end of the spectrum, when a defendant's website facilitates the formation of contractual relationships and "the knowing and repeated transmission of computer files over the Internet[,]" the exercise of personal jurisdiction is proper. *Id.* When a website falls somewhere in between, "the exercise of jurisdiction is determined by the level of interactivity and commercial nature of the exchange of information that occurs on the [w]ebsite." *Id.* The more interactive and commercial a defendant's website is, the more likely it is that the defendant interacted with forum residents through the website and availed itself of the privileges of doing business in the forum, thereby establishing the minimum contacts required for jurisdiction. *See Carrot Bunch Co., Inc v. Computer Friends, Inc.*, 218 F. Supp.2d 820, 825 (N.D. Tex. 2002).

Here, the Website unquestionably falls in the second category because it contains several features that allow interactivity with users to form contractual relationships, targeted advertising to

6

particular forums, and sales of merchandise of products. First, the Website offers visitors the opportunity to enter into contracts with Defendant for a subscription service offering enhanced access and participation with Defendant's "news" reporting. *See* Ex. 1-A. Second, the terms of service governing the website specifically provide that the user consents to location access for the purpose of targeted marketing. *See* Ex. 1-B. Third, the Website interacts with the user by listing specific advertisements on the webpage based on the user's location. *See* Ex. 1-C (accessed from Texas location and showing Texas advertisement). Finally, the Website has a "store" that allows users to purchase merchandise and services such as "online courses". *See* Ex. 1-D. Therefore, the Website is certainly not passive – it is an interactive Website that provides for commercial transactions with users. *See Carrot Bunch*, 218 F. Supp.2d at 826 (defendant's website fell into second category where defendant sold products to and emailed customers through website); *Mothers Against Drunk Driving v. DAMMADD, Inc.*, No. 302CV1712G, 2003 WL 292162, at *5 (N.D. Tex. Feb. 7, 2003) (defendant's website fell within middle range of *Zippo* spectrum where website allowed visitor-host interaction via submission of anonymous tips, visitor donations, and product sales).

"In applying the *Zippo* test, district courts within the Fifth Circuit have often exercised personal jurisdiction over defendants whose websites enabled online purchases." *721 Bourbon, Inc. v. House of Auth, LLC*, 140 F. Supp. 3d 586, 594 (E.D. La. 2015) (citing *Tempur–Pedic Int'l v. Go Satellite, Inc.*, 758 F. Supp.2d 366, 373 (N.D. Tex. 2010); *AdvanceMe, Inc. v. Rapidpay, LLC*, 450 F. Supp.2d 669, 673 (E.D. Tex. 2006); *Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp.2d 895, 901 (N.D. Tex. 2000)). Defendant's Website is exactly such a site and, therefore, this Court should rule in line with other Fifth Circuit district courts.

Moreover, the other aspects of the Website also mitigate in favor of exercising jurisdiction. For example in *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328 (E.D. Mo. 1996), the defendant had put up a website as a promotion for its upcoming Internet service. The service consisted of assigning

users an electronic mailbox and then forwarding advertisements for products and services that matched the users' interests to those electronic mailboxes. *See id.* at 1330. The defendant planned to charge advertisers and provide users with incentives to view the advertisements. *Id.* Although the service was not yet operational, users were encouraged to add their address to a mailing list to receive updates about the service. *Id.* The court rejected the defendant's contention that it operated a "passive Web site." *Id.* at 1333–34. The court reasoned that the defendant's conduct amounted to "active solicitations" and "promotional activities" designed to "develop a mailing list of Internet users" and that the defendant "indiscriminately responded to every user" who accessed the site. *Id.* at 1333–34. Here, the Defendant actively targets Texas residents with advertisements specific to Texas and enters into contracts for subscriptions and sales of goods and services through the Website. *See* Exs. 1-A; 1-B; 1-C; 1-D. Moreover, as alleged in its Amended Complaint—and unrebutted by Defendant—Defendant has entered into actual contracts for subscriptions with Texas residents through the Website, has engaged with paid advertisers targeting Texas residents, and has made actual sales of goods and services to Texas residents through the Website. *See* Doc. 25 at ¶ 4.

Accordingly, the Website satisfies the requisite standard for minimum contacts under a Due Process analysis. There is no question that HuffPost has taken purposeful acts to target Texas residents with its Website and to do business in Texas. As such, the first two elements of the minimum contacts analysis are satisfied. *See Pervasive Software*, 688 F.3d at 221.

The only remaining question is, does Plaintiff's cause of action arise from or is related to the contacts. *See id.* Here, Defendant's contacts with Texas are exclusively through the Website. Therefore, Plaintiff's cause of action—libel based on the Article published on the Website—necessarily arises from or is related to the contacts, which are synonymous with the Website bearing the libelous Article. Accordingly, and as a matter of law, the Court should deny the Motion and find that this Court can properly exercise jurisdiction over HuffPost.

## II. In the Alternative, The Court Should Grant Leave To Conduct Jurisdictional Discovery.

Discovery of jurisdictional facts is appropriate when the existing record is inadequate to support personal jurisdiction and the plaintiff demonstrates that it can supplement its jurisdictional allegations through discovery. *See, e.g., Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005). In addition, when a defendant disputes the factual bases for jurisdiction and discovery could reveal information relevant to determining whether personal jurisdiction exists, the court may receive discovery to help it resolve the jurisdictional issue. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008); *Lloyd's Syndicate 457 v. American Global Maritime Inc.*, 346 F. Supp. 3d 908, 938-39 (S.D. Tex. 2018). The Court should give the plaintiff an opportunity to discover jurisdictional facts so it can establish jurisdiction over the defendant. *See Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981); *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008).

Plaintiff contends that there is enough on this record to make out a *prima facie* case for jurisdiction. However, in the event the Court disagrees, Plaintiff requests leave to conduct jurisdictional discovery. Plaintiff has adduced evidence of a Website that is capable of interacting with Texas residents for commercial purposes. Plaintiff hereby requests, in the alternative, leave to conduct jurisdictional discovery to discover the extent of Defendant's sales of subscriptions, advertising, goods and services to Texas residents and/or targeted at Texas residents through its Website. Under *Zippo*, all of these facts will be pertinent to the Court's jurisdictional determination.

## CONCLUSION

Plaintiff requests that that Court deny the Motion. In the alternative, Plaintiff requests leave to conduct jurisdictional discovery to discover the extent of Defendant's sales of subscriptions, advertising, goods and services to Texas residents and/or targeted at Texas residents through its

Website.

Camara & Sibley LLP

/s/ Joseph D. Sibley
Joseph D. Sibley
State Bar No. 24047203
sibley@camarasibley.com
Camara & Sibley LLP
4400 Post Oak Pkwy.
Suite 2700
Houston, Texas 77027
Telephone: (713) 966-6789
Fax: (713) 583-1131

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing document has been filed on this 13th day of May, 2020, pursuant to the electronic filing requirements of the United States District Court for the Southern District of Texas, which provide for service on counsel of record in accordance with the electronic filing protocols in place.

*/s/ Joseph D. Sibley*
Joseph D. Sibley
