**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Charles Johnson, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:20-cv-00179 |
| TheHuffingtonPost.com, Inc., | § § | |
| Defendant. | § § § § | |

**REPLY IN SUPPORT OF DEFENDANT THEHUFFINGTONPOST.COM, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2)**

1

I.  **INTRODUCTION**

Personal jurisdiction must be based on either general or specific jurisdiction. Plaintiff expressly states that he is not asserting general jurisdiction: "Plaintiff does not contend that personal jurisdiction over HuffPost is grounded on general jurisdiction." Opp. at 2. Thus, Plaintiff's entire argument is based solely on specific jurisdiction. And yet *nothing* in Plaintiff's FAC connects his jurisdictional allegations to the specific alleged harm of defamation in this case.

Plaintiff's only jurisdictional argument is that HuffPost—an out-of-state defendant—is subject to personal jurisdiction because the Article at issue is accessible on HuffPost's website. Fifth Circuit binding cases, however, have rejected this argument repeatedly, including in some of the cases Plaintiff cites in his Opposition. Whether this Court applies Plaintiff's urged *Zippo* test, or the more applicable Fifth Circuit defamation cases cited by HuffPost, Plaintiff cannot base specific jurisdiction on general allegations about HuffPost's internet presence.

Even accepting all of Plaintiff's non-conclusory allegations as true for purposes of this Motion to Dismiss, Plaintiff's FAC provides no nexus on which the Court can base the exercise of specific jurisdiction. Texas is not the focal point of the Article. Rather, the Article is about a meeting that took place in Washington, D.C. between Plaintiff and members of Congress from Maryland and Tennessee. HuffPost did not contact or rely on sources in Texas and the author of the Article was unaware that Plaintiff resided in Texas. These undisputed facts preclude the exercise of personal jurisdiction.

The Court should also reject Plaintiff's request for jurisdictional discovery because Plaintiff fails to identify with the requisite specificity any additional facts he could expect to find to justify the need for it.

## II.     ARGUMENT

As a preliminary matter, HuffPost has not waived its right to challenge personal jurisdiction, as Plaintiff contends. HuffPost presents valid alternative arguments based on a lack of personal jurisdiction (the focus of its Rule 12(b)(2) Motion) and on Plaintiff's failure to state a claim upon which relief can be granted (the focus of its concurrently-filed Rule 12(b)(6) Motion). Federal Rule of Civil Procedure 8(d)(3) provides that a party in HuffPost's shoes "may state as many separate claims or defenses as it has, regardless of consistency." The Fifth Circuit has made clear that "[b]y submitting to the court's power for [a] limited purpose and maintaining [a] personal jurisdiction motion to dismiss, [the moving party] continue[s] to object to the 'power of the court' and d[oes] not waive its personal jurisdiction defense." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 541 (5th Cir. 2019). The Southern District of Texas has also rejected Plaintiff's waiver argument; in *Toshiba International Corp. v. Fritz*, the court held that even filing a third-party complaint or counterclaim in an action does not waive jurisdictional defenses. 993 F. Supp. 571, 573-574 (S.D. Tex. 1998). "[A] party should be able to simultaneously protest personal jurisdiction while vigorously advocating the merits of [the] case." *Id.* Holding otherwise would "require a party to exhaust all jurisdictional defects before addressing the merits of a claim, the very result which Fed.R.Civ.P. 12(b) was intended to reverse." *Id.* Further, HuffPost has no choice but to look to Texas law in its Rule 12(b)(6) Motion, as the Fifth Circuit has held that Texas law applies where a Texas-based plaintiff sues in Texas. *See Levine v. CMP Publ'ns, Inc.*, 738 F.2d 660, 667 (5th Cir. 1984). The Court should disregard Plaintiff's untenable argument that HuffPost has somehow waived its jurisdictional defense.

### A. Plaintiff Hangs His Entire Jurisdiction Argument on Specific Jurisdiction Stemming from HuffPost's Website, But Plaintiff's Cases Do Not Support the Exercise of Specific Jurisdiction Here.

Plaintiff "does not contend that personal jurisdiction over HuffPost is grounded on general jurisdiction." Opp. at 2. Nor do Plaintiff's arguments in favor of the exercise of personal jurisdiction "rely on the 'effects' test or solely . . . on Plaintiff's residence [as] in the *Calder* line of cases[.]" *Id.* at 3. Plaintiff ignores Fifth Circuit authority governing personal jurisdiction in defamation cases like this one. *Clemens v. McNamee*, 615 F.3d 74 (5th Cir. 2010); *Revell v. Lidov*, 317 F.3d 467, 468 (5th Cir. 2002). Instead, Plaintiff's entire jurisdictional argument asserts that the Court should exercise specific jurisdiction over HuffPost based on general qualities of HuffPost's website, relying on the test from *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997). This standard is ill-fitted to the facts at issue here, and even if it were applied, it would not support the exercise of specific jurisdiction over HuffPost.

#### 1. Plaintiff Cannot Meet the Standard for Specific Jurisdiction Courts Apply in Defamation Cases.

Texas federal courts have consistently found a lack of specific jurisdiction in *defamation* cases where the allegedly defamatory publication was not directed at the forum state. Plaintiff fails to address these more relevant defamation cases in his Opposition.

*Clemens v. McNamee*, 615 F.3d 74 (5th Cir. 2010), in particular, eviscerates Plaintiff's case for personal jurisdiction, and his Opposition does not mention this binding Fifth Circuit decision. In *Clemens*, the Fifth Circuit definitively foreclosed the exercise of personal jurisdiction based on a libel plaintiff's contention that he suffered reputational harm in Texas from the alleged defamatory statement. Although Plaintiff claims that his jurisdictional argument is not based "solely . . . on Plaintiff's [Texas] residence," Plaintiff provides no other

3

basis for the exercise of specific jurisdiction *linked to the Article*. Plaintiff fails to distinguish any of HuffPost's defamation cases finding a lack of specific jurisdiction because of a missing nexus between jurisdiction and the allegedly defamatory publication.

The mere fact that HuffPost has a website that Texas residents can access, and the Article in question is available on that website, does *not* automatically confer specific jurisdiction. If that were true, the analysis would have stopped at the fact that the allegedly defamatory publications were available online in the forum state. But that is not where the analysis stops. The Fifth Circuit and Southern District of Texas also properly analyze whether the allegedly defamatory statements were directed at the forum state. *See Revell v. Lidov*, 317 F.3d 467, 468 (5th Cir. 2002), *Herman v. Cataphora*, 730 F.3d 460, 465 (5th Cir. 2013), and *Orhii v. Omoyele*, No. 4:08-CV-3557, 2009 WL 926993, at *4 (S.D. Tex. Mar. 31, 2009). The Court should go through the same analysis here, and when it does, the only logical conclusion is that Plaintiff has not linked HuffPost's allegedly tortious activities to any conduct directed specifically at Texas.

### 2. The *Zippo* Standard Applies for Courts to Exercise General Jurisdiction And Not Specific Jurisdiction Over a Defendant in HuffPost's Position.

Even if the Court applies *Zippo*, however, the result is still that there is no specific jurisdiction over HuffPost in Texas.

The Fifth Circuit has adopted the *Zippo* standard to analyze *general* jurisdiction, not specific jurisdiction, which is the sole basis for Plaintiff's personal jurisdiction claim here. *See Mink v. AAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (discussing categorization of internet use into three tiers per *Zippo*, but rejecting specific jurisdiction arguments and finding only general jurisdiction). Courts will not find specific jurisdiction under *Zippo* where, as here, the underlying harm is to reputation and the alleged source of that reputational harm simply happens to be an article accessible in Texas via the internet. *See Revell*, 317 F.3d at 476 (using

*Zippo* standard and determining, "[a] more direct aim [based on internet use] is required than we have here. In short, this [article] was not about Texas").

Some district courts have applied *Zippo* to find specific jurisdiction, but not in cases similar to this one. Plaintiff's own string of web-based trademark infringement cases illustrates that when district courts adopt *Zippo* to find specific jurisdiction, it is only where the specific injury giving rise to the cause of action is rooted in the defendant's internet activities directed at Texas. *See*, *e.g.*, *Carrot Bunch Co., Inc. v. Computer Friends, Inc.*, 218 F. Supp. 2d 820, 826 (N.D. Tex. 2002) (applying *Zippo* to find specific jurisdiction where the defendant's internet presence directly gave rise to the causes of action for trademark infringement and cybersquatting using plaintiff's name). Unlike these cases finding specific jurisdiction based on the direct connection between the out-of-state defendants' internet activities and the alleged cause of action, Plaintiff's jurisdictional argument here is based on the thin connection that the Article's availability in Texas via the internet coupled with HuffPost's alleged internet presence in Texas more *generally* are enough for the exercise of specific jurisdiction. *See*, *e.g.*, Opp. at 8 (arguing that "[HuffPost's] contacts with Texas are exclusively through the Website[,]" and "*[t]herefore*, Plaintiff's cause of action . . . *necessarily* arises from or is related to the contacts") (emphasis added). Even under the *Zippo* standard, this limited connection to the forum state is insufficient to confer specific jurisdiction.

*Zippo*'s analysis shows that the exercise of specific jurisdiction is not warranted in this case, where HuffPost's alleged internet presence is not the source of the cause of action itself. *Zippo* sets forth a sliding scale for assessing internet activity to help courts determine whether a defendant's internet presence gives rise to personal jurisdiction. 952 F. Supp. at 1123-1124. The court in *Zippo* found the exercise of personal jurisdiction appropriate where the defendant's

5

internet activities gave rise to the plaintiff's cause of action because the activities culminated in "the intended object of . . . transactions . . . in Pennsylvania." *Id.* at 1126. Here, differently, HuffPost's alleged internet activities relate solely to its maintenance of a site that can be *accessed* in Texas—*not* that the specific injuries at issue in this suit were the result of activities, transactions, or harm *directed* at Texas. *See Zippo*, 952 F. Supp. at 1126; Campbell Decl. ¶¶ 5-7 (Article's author made no contact with Texas and was unaware of Plaintiff's Texas residence); Brand Decl. ¶¶ 4, 5 (HuffPost's website does not specifically target Texas, nor was the Article viewed disproportionately in Texas). In line with this approach, the Southern District of Texas recently held, analyzing *Zippo*, that "[w]here specific jurisdiction is invoked, the court should consider only the portions of the website from which the plaintiff's claims arise[.]" *Reparify, Inc. v. AirPro Diagnostics, LLC*, No. H-19-1370, 2019 WL 7987116, at *6 (S.D. Tex. July 15, 2019). Plaintiff's allegations about HuffPost's *general* website presence do not relate to the source of the alleged defamation beyond the mere fact that the Article is available to Texas visitors of HuffPost's website. *See* FAC ¶ 4. Under *Zippo* and the Texas federal cases applying it, this thin connection cannot serve as the basis for the exercise of specific jurisdiction.

All of the other cases Plaintiff cites are similarly distinguishable from the facts here or are otherwise unhelpful to Plaintiff's case. *Construction Cost Data, LLC v. Gordian Group, Inc*, discussed the *Zippo* test, but held that a website similar to HuffPost's is **not** enough to confer personal jurisdiction. No. 4:16-CV-114, 2016 WL 10951769, at *3 (S.D. Tex. July 22, 2016). "It is well established that the maintenance of a website, even one containing allegedly infringing materials, and which is accessible in the forum state, is not enough to establish specific jurisdiction." *Id.* (internal brackets and quotation marks removed). Similarly, *721 Bourbon, Inc. v. House of Auth, LLC*, 140 F. Supp. 3d 586, 596 (E.D. La. 2015), declined to find personal

6

jurisdiction based on the defendant's online presence and denied the plaintiff's request for jurisdictional discovery.

In *Carrot Bunch Co., Inc. v. Computer Friends, Inc.*, 218 F. Supp. 2d 820, 826 (N.D. Tex. 2002), by contrast, the defendant's internet presence directly gave rise to the causes of action.  The defendant was alleged to have infringed plaintiff's trademarks and cybersquatted using the plaintiff's name.  *Id.*  Moreover, the defendant's activities were all done "with the knowledge that [defendant's] actions would likely injure [plaintiff] in Texas," which is missing here.  *See id.*; Campbell Decl. ¶ 7 (Article's author was unaware of Plaintiff's Texas residence at the time the Article was published).  The facts in *Carrot Bunch* tie the exercise of jurisdiction to a nexus relating to the source of the alleged injury, which Plaintiff fails to allege here.  Plaintiff's other cases, all based in trademark infringement, fail to help him for similar reasons: *see Mothers Against Drunk Driving v. DAMMADD, Inc.*, No. 302CV1712G, 2003 WL 292162, at *6 (N.D. Tex. Feb. 7, 2003) (Texas trademarks infringed through the internet; court noted that the claims "*arise out of* the visible nature of the [allegedly infringing] mark throughout the website") (emphasis added); *Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 370 (N.D. Tex. 2010) (trademark infringement case where allegedly infringing product was sold into Texas through defendant's website, giving rise to claim); *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006) (trademark infringement case where infringing services sold into Texas through defendant's website; the source of the harm itself was directed into Texas); *Am. Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc.*, 106 F. Supp. 2d 859, 904 (N.D. Tex. 2000) (trademark infringement case where the defendant's website itself was source of alleged infringement, and it was accessible in Texas; court noted that defendant "could reasonably have anticipated being haled into court to defend against trademark-related claims if

7

it chose to do business in [plaintiff's] locale"); *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328, 1333-1334 (E.D. Mo. 1996) (trademark infringement case; court held that "[t]he State of Missouri has an interest in resolving this case and determining whether a Missouri corporation's trademark is being infringed").

Here, Plaintiff has not alleged anything relating to the Article beyond users being able to find the allegedly defamatory publication of their own accord in Texas. *See* FAC ¶ 4 (alleging HuffPost's "regular[]" activities purportedly tying it to Texas, without attempting to link any of those activities to the Article). Without any allegation that this specific Article was directed at Texas, Plaintiff's FAC cannot survive HuffPost's jurisdictional challenge.

### B. Plaintiff Fails to Justify the Need for Jurisdictional Discovery.

HuffPost already has stated that it will treat Plaintiff's non-conclusory allegations as true for purposes of this motion. Mot. at 2. Thus, allowing Plaintiff jurisdictional discovery to simply confirm the allegations of his FAC that HuffPost accepts as true would not change the result that the Court lacks personal jurisdiction over HuffPost.

Plaintiff claims that personal jurisdiction is appropriate where "the plaintiff demonstrates that it can supplement its jurisdictional allegations through discovery," Opp. at 9, citing *Trintec Industries v. Pedre Promotional Products*, 395 F.3d 1275, 1283 (Fed. Cir. 2005), but Plaintiff fails to do make such a showing in any meaningful way. *See also Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 672 (S.D. Tex. 2014) ("A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction"). Instead, Plaintiff simply states that he has "adduced evidence of a Website that is capable of interacting with Texas residents for commercial purposes." Opp. at 9. However, as discussed in detail

8

above, evidence regarding HuffPost's general internet presence alone does not support the existence of a jurisdictional nexus with respect to the Article at issue. Plaintiff's request is more tailored to a general jurisdiction theory—which he has not even advanced—and does not support Plaintiff's *specific* jurisdiction position, which is the sole basis for Plaintiff's personal jurisdiction claim here. Having abandoned his general jurisdiction argument, discovery would not help advance Plaintiff's claim, and the Court should deny Plaintiff's request. *See*, *e.g.*, *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (affirming denial of request for jurisdictional discovery where plaintiff did "not even make a preliminary showing of jurisdiction"); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) (affirming denial of request for jurisdictional discovery where "the district court did not believe that the request would add any 'significant facts'").

### III. CONCLUSION

For these reasons, HuffPost respectfully requests that the Court dismiss Plaintiff's FAC for lack of personal jurisdiction, with prejudice and without further leave to amend, and deny Plaintiff's request for jurisdictional discovery.

DATED: May 18, 2020

Respectfully submitted,

/s/ *Jean-Paul Jassy*
Jean-Paul Jassy (Admitted *Pro Hac Vice*)
William T. Um (Admitted *Pro Hac Vice*)
Elizabeth Baldridge (Admitted *Pro Hac Vice*)
JASSY VICK CAROLAN LLP
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
jpjassy@jassyvick.com
wum@jassyvick.com
ebaldridge@jassyvick.com

Patrick W. Mizell

9

ATTORNEY IN CHARGE
Texas Bar No. 14233980
Federal ID No. 36390
VINSON & ELKINS L.L.P.
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone: (713) 758.3882
Facsimile: (713) 615.5493
pmizell@velaw.com

Marc A. Fuller
Texas Bar No. 24032210
Federal ID No. 2035080
Megan M. Coker
Texas Bar No. 24087323
Federal ID No. 178550
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Telephone: (214) 220-7700
mfuller@velaw.com
megancoker@velaw.com

*Attorneys for Defendant TheHuffingtonPost.com, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2020, copy of the above and foregoing has been filed electronically with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Elizabeth Baldridge*
Elizabeth Baldridge