**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Charles Johnson, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:20-cv-00179 |
| TheHuffingtonPost.com, Inc., | § § | |
| Defendant. | § § § | |

# REPLY IN SUPPORT OF DEFENDANT THEHUFFINGTONPOST.COM, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)

i

I.      INTRODUCTION

This Court has the authority to determine as a matter of law whether the implication alleged by Plaintiff – that the Article at issue paints him as plotting *genocide* in a conspiracy with Congressmen – is reasonable. It is not. Plaintiff hopes the Court will ignore his history of racist vitriol and those who fairly call out his racist past, and instead adopt his newfound theory, which he did not mention in his original complaint or in his opposition to HuffPost's first motion to dismiss. A reasonable reading of the Article at issue carries no such implication.

What the Article does state or even reasonably imply is constitutionally protected as either non-actionable opinion or substantially true facts. Moreover, because the Article accurately reported the statements of third-party sources on these issues of public concern, Texas Civil Practice & Remedies Code § 73.005(b) also applies to protect HuffPost. Finally, as a public figure voluntarily involved in controversial, racially-charged topics, Plaintiff must adequately allege actual malice, but his allegations are insufficient as a matter of law. Plaintiff's Opposition brief does not rebut any of HuffPost's arguments, and as such the Court can and should grant HuffPost's motion on any of the foregoing bases.

II.     ARGUMENT

   A. **HuffPost's Motion Is Properly Brought Pursuant to Rule 12(b)(6).**

Plaintiff does not—because he cannot—dispute that this Court can consider documents incorporated by reference in the complaint, as well as materials subject to judicial notice, when ruling on a Rule 12(b)(6) motion to dismiss. *See* Mot. at 2 n.2, 6 & n.7 (citing, *inter alia*, *Ferguson v. Bank of N.Y. Mellon Corp.*, 802 F.3d 777, 780 (5th Cir. 2015)). Plaintiff fails to specify what evidence he purports to "object" to as being outside the pleadings, *see* Opp. at 2, but in any case, HuffPost's Motion asks the Court to consider the Article referenced in Plaintiff's

FAC, along with its hyperlinked materials as a reader would view them.  *See* Mot. at 2, 6, 14-15.  The Court can properly consider these materials on a Rule 12(b)(6) motion.

Plaintiff expressly concedes that the Court can rule on HuffPost's opinion argument and its invocation of Texas Civil Practice & Remedies Code § 73.005 at the Rule 12(b)(6) stage.  Opp. at 3-4.  Both of those arguments require an examination of the Article at issue.[1]  Contrary to Plaintiff's unsupported contention, Opp. at 2, this Court can also determine—as a matter of law—whether an allegedly defamatory implication can be discerned from the Article.  *Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1007 (S.D. Tex. 2018).  HuffPost's substantial truth argument is based on Plaintiff's own statements, including in his pleadings before this Court.  Mot. at 12-13.  And, federal courts, including the Fifth Circuit, routinely reject boilerplate allegations of actual malice, just like Plaintiff's here, at the pleadings stage.  *Id.* at 18-19; *see also Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 745 (5th Cir. 2019) (affirming dismissal under Rule 12(b)(6), in part for failure to plead actual malice).

There is no legal basis or reason to convert HuffPost's motion to dismiss into a motion for summary judgment.  With or without the judicially noticeable material, HuffPost's Rule 12(b)(6) Motion can and should be granted, and no amount of discovery will change that result.

### B. Plaintiff Fails to Show the Article Actually Publishes or Reasonably Implies the Allegedly Defamatory Statements.

Plaintiff does not meaningfully dispute that the Article does not actually label Plaintiff a "white supremacist" or "anti-Semitic."  A publication is not capable of a literal defamatory meaning if it does not "make [the] specific allegations" of defamatory material or does not "directly accuse" the plaintiff of the wrongdoing claimed.  *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1165 (5th Cir. 2006).  Instead, Plaintiff alleges defamation by implication.  Nowhere

---

[1] Even Plaintiff relies on the Article itself throughout his brief.  *See*, *e.g.*, Opp. at 5-6, 10 n.3, 13.

2

does Plaintiff dispute that this Court can determine—as a matter of law at the pleading stage—whether content reasonably carries an alleged implication. Mot. at 7 (citing *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 632 (Tex. 2018); *Tu Nguyen*, 318 F. Supp. 3d at 1007).

Plaintiff's alleged implication argument is patently unreasonable and inconsistent with recent Texas Supreme Court precedent. In discussing the legal standards for assessing the "gist" or reasonable implications of the Article, Plaintiff never mentions the Texas Supreme Court's 2018 decision in *Tatum*. *Tatum* holds that "a plaintiff who seeks to recover based on a defamatory implication—whether a gist or a discrete implication—must point to 'additional, affirmative evidence' within the publication itself that suggests the defendant 'intends or endorses the defamatory inference.'" 554 S.W.3d at 635 (quoting *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990)). Plaintiff cites no such textual evidence from the Article to support any suggestion that HuffPost intended to accuse Plaintiff of advocating "DNA sequencing" as a "plot for genocide" (FAC ¶ 11; *see also* Opp. at 10), or that he is "plotting with Congress" (Opp. at 16) to "take out" non-whites and Jews and "harm" people (*id.* at 9, 11).[2]

Plaintiff does not deny that he met with Congressmen and discussed "DNA sequencing," as reported by HuffPost. Ex. 1; Opp. at 15 (admitting that Plaintiff had a "meeting with the legislators over DNA sequencing"). The Article quotes Rep. Roe's aide as stating that Rep. Roe was unaware of Plaintiff's "'abhorrent'" views on race, but that those "'previously expressed views . . . *were not alluded to*'" in the meeting. Ex. 1 (emphasis added). Nothing in the Article suggests that Plaintiff somehow advocated using "DNA sequencing" to commit genocide or otherwise cause harm at the meeting or otherwise. *Id.* Instead, the Article provides context on

---

[2] To the extent Plaintiff's purported implication is based on his expulsion from Twitter for threatening to "take out" a Black Lives Matter activist, Plaintiff does not deny that is true. *See* Ex. 1; *see also* Ex. 2. All Exhibits cited in this reply brief are Exhibits to HuffPost's Rule 12(b)(6) Motion to Dismiss, filed at ECF No. 33-1.

Plaintiff's previously expressed views on race, and recites an aide's assertion that those views were ***not*** discussed at Plaintiffs' meeting with Rep. Roe and Rep. Harris, during which Plaintiff "'advocated for more publicly-available sequenced genomes,'" without reference to race, let alone genocide.  *Id.  See also Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 381 (Tex. 2019) (the media serves to "provid[e] context for readers").[3]

Plaintiff's implication argument is a desperate pivot, and it fails.  The original complaint did not allege any implication about advocating genocide.  *See* ECF No. 1.  In his Opposition to HuffPost's Motion to Dismiss the original complaint in this action, Plaintiff asserted simply that the "gist" of the Article is that "Plaintiff is anti-Semitic and a white supremacist."  ECF No. 27 at 6.  Again, nothing about advocating genocide.  In other words, what Plaintiff now claims is the Article's obvious implication was not mentioned in his original complaint or his response to HuffPost's first motion to dismiss.  The alleged implication is not reasonable as a matter of law.[4]

Contrary to Plaintiff's argument, *Cox Media Group, LLC v. Joselevitz* is on point.  524 S.W.3d 850, 863 (Tex. App.—Houston [14th Dist.] 2017).  The critical point in *Cox Media* is that a publication's discussion of a potentially harmful subject in *proximity* to a plaintiff does not reasonably imply the plaintiff's involvement, and cannot give rise to a claim for defamation.  524 S.W.3d at 863.  Here, the Article's discussion of white supremacists' interest in ancestry and genetics to "prove their white heritage" below its discussion of Plaintiff's meeting with lawmakers does not leave any specific impression about Plaintiff, let alone that Plaintiff (or even white supremacists) somehow advocates using "DNA sequencing" to commit genocide.  *See* Ex.

---

[3] Plaintiff offers no alternative explanation for his desire to discuss "DNA sequencing" with legislators.

[4] Plaintiff's Opposition also advances the untenable argument that HuffPost somehow admits Plaintiff's newfound implication argument.  Opp. at 8.  It does not.  HuffPost's Motion states that the Article "centers on matters of national politics and Plaintiff's attempt to influence them," Mot. at 14, but it is an absurd leap to claim the Article implies Plaintiff's involvement in national politics is aimed at racially-motivated genocide.  HuffPost makes no such admission, and it is not supported by the Article itself.  *See Tatum*, 554 S.W.3d at 632.

1. And the Article's separate discussion of white supremacists provides even less support for Plaintiff's far-fetched "inference" than the inference in *Cox Media* that the plaintiff was part of a "pill mill." 524 S.W.3d at 863. In *Cox Media*, the article *did* discuss pill mills—just not with respect to the plaintiff. *Id.* Here, differently, the Article makes no mention of a plot to commit genocide. Plaintiff cannot base his claim on such a patently unreasonable reading of the Article.

### C. Plaintiff's FAC Should Also Be Dismissed Because It Challenges Only Non-Actionable Opinions.

Much of Plaintiff's response to HuffPost's admittedly legitimate non-actionable opinion argument is based on the same concept discussed above: that the Article's overall gist is no longer that "Plaintiff is anti-Semitic and a white supremacist," as Plaintiff previously argued, ECF No. 27 at 6, but that the Article can somehow now be read to imply that Plaintiff is "seeking to carry out racist/***genocidal*** activities" to "harm" and "'take out' non-whites and Jews." Opp. at 9-11 (emphasis added). As discussed above, such implication is unreasonable as a matter of law.

With respect to the actual content of the Article—and even assuming *arguendo* that the Article labels Plaintiff a racist and anti-Semite—Plaintiff cites zero case law to counter HuffPost's opinion argument. And Plaintiff makes no attempt to address ***more than a dozen*** different cases directly on point from Texas and around the country all holding the same thing: labels like "racist," "Holocaust-denier," and "anti-Semitic," are considered opinion, rhetorical hyperbole and/or subjective impressions—*i.e.,* not actionable defamation. *See* Mot. at 9-12.[5] Plaintiff reinforces HuffPost's point when he labels his statement "questioning the numbers of Jewish victims and the causes of death of those victims in the Second World War" as a

---

[5] The Article's statements about Plaintiff are especially well-positioned for protection as non-actionable opinion because the Article sets forth "the facts underlying [the] opinion[.]" *See Brewer Capital Cities/ABC, Inc.*, 986 S.W.2d 636, 643 (Tex. App.—Fort Worth 1998, no pet.). Mot. at 12 n. 9. Plaintiff's argument otherwise ignores the references to reliable sources, like the Southern Poverty Law Center ("SPLC"), which the Article cites. *See generally* Exs. 1-3.

5

"dissenting *viewpoint*" about the Holocaust. Opp. at 11-12 (emphasis added). Despite admitting that he "question[s]" critical aspects of the Holocaust, Plaintiff claims it is "preposterous" to suggest he is a Holocaust denier or anti-Semitic. *Id.* at 12. Many would disagree with that "viewpoint."

Plaintiff neatly sums up HuffPost's opinion characterization when he states: "[HuffPost] tells us that whether someone is a white nationalist, white supremacist, Holocaust denier, or anti-Semite is not objectively verifiable because it deals with the subjective beliefs of the Plaintiff." Opp. at 9-10. That is precisely HuffPost's argument, and what more than a dozen cases—at least—have determined. Plaintiff makes no effort to explain why all (or any) of those cases could be wrong. Plaintiff provides no valid rebuttal to HuffPost's non-actionable statements of opinion argument, and the Court should dismiss the FAC on this basis alone.

        **D.**        **The Doctrine of Substantial Truth Provides Another Basis for Dismissal.**

To the extent any of the allegedly actionable material is verifiable—which HuffPost does not concede—such material is still constitutionally protected as substantially true. The standard for substantial truth is whether "the substance, the gist, the sting, of the libelous charge [is] justified." *Masson v. The New Yorker*, 501 U.S. 496, 516 (1991). Substantial truth can be decided at the motion to dismiss stage. *O'Gara v. Binkley*, 384 F. Supp. 3d 674, 687 (N.D. Tex. 2019) (granting motion to dismiss and ruling that a defendant need only show that "the *substance* of the charge [is] true" (emphasis added)); *Tu Nguyen*, 318 F. Supp. 3d at 1007 (granting Rule 12(b)(6) motion in part based on doctrine of substantial truth).

As a starting point, Plaintiff makes clear that he "***does not complain*** regarding the truth or falsity" of statements "attributed to third party sources." FAC ¶ 8 (emphasis added). The Article attributes the following to third party sources: SPLC's statement that "Johnson is widely

6

known as a white nationalist and social-media troll"; Congressman Roe's office's statement that he "would not have taken the meeting had he been aware of Mr. Johnson's previously expressed views—which he believes are abhorrent"; and Congressman Harris's statement, as obtained by the *Daily Beast*, that he was "unaware of [Johnson's] previous associations" and "disavow[s] and condemn[s] white supremacy and anti-semitism." Ex. 1. Moreover, Plaintiff openly admits to questioning critical aspects of the Holocaust. Opp. at 11-12. Plaintiff also admits that he talked to lawmakers about DNA sequencing. *See* Opp. at 15 (acknowledging "Plaintiff's meeting with the legislators over DNA sequencing").

Instead of engaging with the actual standard for the substantial truth doctrine, Plaintiff's Opposition sweepingly asserts that the Article is "not . . . true[.]" Opp. at 11. Plaintiff has no response to the long list of reasons that calling Plaintiff a racist, a Holocaust-denier, and a white nationalist *is* justified. It is true that extremist-tracking groups consider Plaintiff a white nationalist. *See* Exs. 1, 2, 3. It is true that Plaintiff has suggested that other races are "dumber" than whites. *Id.* at Ex. 2. It is true that Plaintiff questions how many people were killed in the Holocaust. Opp. at 12. Plaintiff does not deny any of this, and as such, Plaintiff provides no basis why the Court should not find that the content of the Article is substantially true even assuming the challenged material is verifiable.

E. **Plaintiff Fails to Adequately Refute HuffPost's § 73.005(b) Defense.**

Plaintiff acknowledges that HuffPost's § 73.005(b) defense is legitimate for consideration on a Rule 12(b)(6) motion. Opp. at 3. Section 73.005(b) applies here to protect the Article's reporting on third-party sources. *See generally* Opp. at 12-14. Instead, Plaintiff claims that the Article does not properly attribute its report to third-party sources. *Id.* at 12-13. This is incorrect.

First, the Article directly attributes one of the main statements Plaintiff complains of to the SPLC. *See* Ex. 1 ("Johnson is widely known as a white nationalist and social-media troll, ***according to the Southern Poverty Law Center***"); *Hall*, 579 S.W.3d at 381 (describing phrase "according to" as "sourcing language" in privileged reporting). Plaintiff skips over this direct attribution, and he does not dispute that the Article accurately reported the SPLC's allegation that he is a "white nationalist." *See* Opp. at 12-14. Second, contrary to Plaintiff's contention, the Article was not "unique" in its discussion of Plaintiff's meeting with Congressmen Harris and Roe. Opp. at 12. As hyperlinked in the Article, an ***earlier** Daily Beast* article reported on Plaintiff's racist past and his meeting with legislators "to discuss genetic testing and DNA." Exs. 1, 6. Third, Plaintiff argues with zero supporting authority that hyperlinks within the Article cannot count as attributions to third-party sources. Opp. at 12-14. But *Adelson v. Harris*, 133 Nev. 512, 518 (2017), and *Gubarev v. Buzzfeed, Inc.*, 340 F. Supp. 3d 1304, 1318-1319 (S.D. Fla. 2018), both hold that hyperlinks serve as "specific, active, and accurate ***attribution***" (*Adelson*, 133 Nev. at 518 (emphasis added)), and that analysis of hyperlinks "d[oes] not require facts beyond those already in the record" (*Gubarev*, 340 F. Supp. 3d at 1318-1319). *Adelson* and *Gubarev* did not hinge their recognition of hyperlinks on the existence of language indicating "reports." *Id.* In any event, the Article here also includes such language, such as stating that its report on Plaintiff was "according to the [SPLC]," quoting a Congressional aide and citing the *Daily Beast*. Ex. 1. Plaintiff does not cite a single case holding that hyperlinks *cannot* serve as attribution under § 73.005(b), or for any other purpose. *See generally* Opp. at 12-14. The Court can grant HuffPost's motion based on § 73.005(b)'s robust protection of reports like the Article.[6]

---

[6] Plaintiff also incorrectly states that he does not have the burden to show that the Article is *not* substantially true. Opp. at 14 n. 4. The law is clear that, "[i]n a defamation suit against a media defendant over a matter of public concern, the plaintiff bears the burden of proving falsity." *Walker*, 938 at 745.

8

### F. The FAC Insufficiently Alleges Actual Malice.

#### 1. Plaintiff is, at a Minimum, a Limited-Purpose Public Figure.

Plaintiff is at least a limited-purpose public figure, which means he must adequately plead actual malice to state a defamation claim. *See*, *e.g.*, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). As HuffPost's Motion describes, Plaintiff made public appearances and his controversial views on race were widely reported ***prior*** to publication of the Article. *See* Exs. 2-5. His FAC corroborates this when it alleges that Plaintiff is "admittedly involved with conservative political causes." FAC ¶ 6. Plaintiff is a limited-purpose public figure with respect to his statements on controversial politics and issues concerning race. *See Brueggemeyer v. Am. Broadcasting Co.*, 684 F. Supp. 452, 458 (N.D. Tex. 1988) (plaintiff was limited-purpose public figure who "'voluntarily engaged in a course of conduct … bound to invite attention and comment'" (quoting *Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859, 861 (5th Cir. 1978))). Plaintiff falsely claims that the Article was the "impetus" for the discussion of Plaintiff's racist past and his meeting with legislators to discuss DNA sequencing, Opp. at 15, but the Article cites to a very similar, ***previously-published*** *Daily Beast* article making the same points. Exs. 1, 6.

Not all public figures are recognized by all people, and a limited-purpose public figure need not be a household name. *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 270 n.8 (S.D.N.Y. 2013). Plaintiff does not dispute his public appearances and the controversial nature of his past statements. *See generally* Opp. at 14-15. Instead, he bases part of his counterargument on the fact that Congressmen Harris and Roe apparently were not familiar with Plaintiff, *id.*, but does not deny the Article's report that Congressman Gaetz gave him a ticket to the State of the Union speech *one week prior*, which caused a significant backlash *because of* Plaintiff's views. Ex. 1.[7]

---

[7] Plaintiff argues that, even assuming that he is a limited-purpose public figure on "controversial alt-right topics and racially motivated rhetoric," that would not make him a limited-purpose public figure for purposes of the Article's

### 2. Plaintiff's FAC Falls Far Short of Adequately Alleging Actual Malice.

Plaintiff's actual malice allegations are insufficient. Plaintiff boils his actual malice allegations down to the claim that HuffPost has a "left-leaning agenda" that purportedly gave rise to an alleged implication that does not exist. *See* Opp. at 16.[8] But this kind of motive-based allegation for actual malice cannot suffice under well-established law. *See*, *e.g.*, *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 165 (Tex. 2004) ("actual malice concerns the defendant's attitude toward the truth, not toward the plaintiff"); *Peter Scalamandre & Sons, Inc. v. Kaufman*, 113 F.3d 556, 561 (5th Cir. 1997) (same). Further, "[e]ven assuming the alleged 'leftist enmity' is real, the motivations behind [a defendant's] communications—inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law." *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) (holding that allegations of HuffPost's purported political bias could not support a finding of actual malice, and dismissing case without leave to amend). Plaintiff provides no valid allegations of actual malice that survive a motion to dismiss. *Peter Scalamandre*, 113 F.3d at 560.

### III. CONCLUSION

Subject to its Rule 12(b)(2) motion, HuffPost respectfully requests that the Court grant its Rule 12(b)(6) motion, and dismiss the FAC with prejudice and without leave to amend.

DATED: May 19, 2020

Respectfully submitted,

/s/ *Jean-Paul Jassy*
Jean-Paul Jassy

---

alleged gist, which he claims is his advocacy for racial genocide. *See* Opp. at 9, 15. But if Plaintiff is a limited-purpose public figure for purposes of racially-motivated rhetoric, then that purpose fits squarely into the gist of the Article as Plaintiff describes it. In any event, courts do not look at controversies in a limited purpose public figure analysis in such a granular way. *See Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 434 (5th Cir. 1987) (determining that labor violence at a bottling plant in Guatemala was an issue of public concern in part because "Central American countries [on the whole] have become a focus of national concern").

[8] Plaintiff does not distinguish HuffPost's Supreme Court authorities holding that a "failure to investigate" itself does not establish actual malice, or that even an "extreme departure from professional standards is insufficient to prove actual malice," or other authorities holding that a clarification shows a *lack* of actual malice. Mot. at 19-20.

10

Jean-Paul Jassy (Admitted *Pro Hac Vice*)
William T. Um (Admitted *Pro Hac Vice*)
Elizabeth Baldridge (Admitted *Pro Hac Vice*)
JASSY VICK CAROLAN LLP
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
jpjassy@jassyvick.com
wum@jassyvick.com
ebaldridge@jassyvick.com

Patrick W. Mizell
ATTORNEY IN CHARGE
Texas Bar No. 14233980
Federal ID No. 36390
VINSON & ELKINS L.L.P.
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone: (713) 758.3882
Facsimile: (713) 615.5493
pmizell@velaw.com

Marc A. Fuller
Texas Bar No. 24032210
Federal ID No. 2035080
Megan M. Coker
Texas Bar No. 24087323
Federal ID No. 178550
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3900
Dallas, TX 75201
Telephone: (214) 220-7700
mfuller@velaw.com
megancoker@velaw.com

*Attorneys for Defendant TheHuffingtonPost.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2020, copy of the above and foregoing has been filed electronically with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Elizabeth Baldridge*
Elizabeth Baldridge