IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CHARLES JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 4:20-cv-00179 |
| THEHUFFINGTONPOST.COM, INC.,, ) | |
| ) | **JURY DEMANDED** |
| Defendant. ) | |
| ) | |
| ) | |

**RESPONSE TO DEFENDANT'S NOTICE OF SUPPLEMENTAL AUTHORITY
IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
FOR LACK OF PERSONAL JURISDICTION**

Plaintiff Charles Johnson ("Johnson" or "Plaintiff") hereby responds to Defendant TheHuffingtonPost.com, Inc.'s ("HuffPost" or "Defendant") Notice of Supplemental Authority in Support of Motion to Dismiss First Amended Complaint for Lack of Personal Jurisdiction ("Supp. Brief", Doc. 41) and would respectfully show the Court as follows:

**ARGUMENT AND AUTHORITIES**

In the Supp. Brief, Defendant raises a recent opinion issued by the United States District Court for the Eastern District of Texas in *Butowsky v. Gottlieb*, Case No. 4:19-CV-00180-ALM-KPJ (E.D. Tex. Jul. 16, 2020) as supposed helpful case law in support of its argument for dismissal in this case on grounds of personal jurisdiction. *See* Doc. 41-1. To the contrary, the case demonstrates that this Court should exercise jurisdiction or, at minimum, grant jurisdictional discovery.

In *Butowsky*, the court analyzed whether the website *Vox.com* ("*Vox*") could be hailed into a

Texas court for defaming a Texas resident solely based on the fact that *Vox* was accessible in Texas. *See* Doc. 41-1 at p. 20-25.  Not surprisingly, the *Butowsky* court held that mere accessibility of a website in a forum, without more, does not subject a First, HuffPost correctly points out some similarities between the two cases.  In both cases, the online articles in question do not mention Texas and were not based on sources from Texas.  *See* Doc. 41 at p. 2.  Also, in both cases, only a small percentage (a lower percentage than Texas's proportionate share of the U.S. population) of readers clicking on the articles could be traced to Texas IP addresses.[1]  *See id.*

But that is where the similarities end and become dwarfed by the dissimilarities.  Unlike the plaintiff in *Butowsky*, Plaintiff has, in this case, made the following jurisdictional allegations:

> Defendant regularly conducted its online publishing and other business through its website in Texas through www.HuffPost.com (the "Website") and derives substantial revenue from its subscription, sales, and advertising by servicing the Texas market through the Website and the Article complained of herein was published on the same Website.  Moreover, by publishing "news" stories on its Website, Defendant attracts subscribers, advertisers, and customers who purchase merchandise and services.  Defendant offers paid subscriptions to Texas residents and tracks the location and activities of Texas residents on the Website thereby enabling targeted advertising to Texas residents that generate substantial revenue for Defendant.  Defendant sells merchandise and services on the Website to Texas residents and generates substantial profits from these sales.  Defendant has actually entered into contracts for subscriptions to its online subscription services with Texas residents through its Website.  Defendant has actually entered into contracts with advertisers in Texas to advertise on its Website and/or ran advertisements on its Website geared to the Texas market.  Defendant has actually sold merchandise and services through its Website to Texas residents.  These are sufficient minimum contacts with Texas from which the conduct complained of arises because the article was published on the same Website the HuffPost offers and obtains paid subscriptions to Texas residents, targets paid advertising toward Texas residents, and offers and sells merchandise and services to Texas residents.  Based on this conduct, Defendant has purposefully availed itself of the privileges of doing business in Texas through online publishing, marketing, and sales to Texas residents and to exercise jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

*See* Doc. 25 at ¶ 4.

The Court must accept these jurisdictional allegations as true and resolve any factual conflicts in favor of the plaintiff to the extent they are not controverted in the Motion.  *See Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000).  In its Motion [Doc. 32], Defendant provides

---

[1] Plaintiff does not concede the accuracy of Defendant's figures or methodology expressed in Doc. 32 at p. 7 in determining the number of alleged readers clicking on the article in question.  However, for purposes of this jurisdictional analysis, the accuracy of these number is immaterial and the Court can assume they are true because they are irrelevant to the outcome.

absolutely no evidence to rebut those jurisdictional allegations.  Therefore, the Court must accept them as true.

The *Butowsky* Court's analysis suggests that the presence of these allegations (assuming unrebutted as is the case here) would have changed the outcome of that case.  As the *Butowsky* court observed, in distinguishing other case law, the plaintiff in that case had made no "specific allegations that" *Vox* had "derived substantial revenue and other benefits by selling advertising to Texas businesses, and made substantial efforts to distribute their programs and increase their popularity in Texas."  *See* Doc 41-1 at p. 24 (distinguishing *TV Azteca v. Ruiz*, 490 S.W.3d 29, 48-49 (Tex. 2016)).  Plaintiff has made not only those unrebutted allegations in this case that must be accepted as true (*see* Doc. 25 at ¶ 4), but has produced evidence showing that:

- The Website offers visitors the opportunity to enter into contracts with Defendant for a subscription service offering enhanced access and participation with Defendant's "news" reporting.  *See* Doc. 32-1-A.

- The terms of service governing the Website specifically provide that the user consents to location access for the purpose of targeted marketing.  *See* Doc. 32-1-B.

- The Website interacts with the user by listing specific advertisements on the webpage based on the user's location.  *See* Doc. 32-1-C (accessed from Texas location and showing Texas advertisement).

- The Website has a "store" that allows users to purchase merchandise and services such as "online courses".  *See* Doc. 32-1-D.

Moreover, the *Butowsky* discussed Fifth Circuit precedent providing for jurisdiction in a case such as this, where the website in question "manifests an intent to target and focus on [forum state] readers".  Doc 41-1 at p. 24 (quoting *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002)).  Thus, *Butowsky*, demonstrates that under the relevant and controlling Fifth Circuit and other authorities, this

3

Court should exercise jurisdiction based on the uncontroverted jurisdictional allegations and proof or, at a minimum, the Court should grant jurisdictional discovery.

## CONCLUSION

For all of these reasons and as briefed in his Response, Plaintiff requests that that Court deny the Motion. In the alternative, Plaintiff requests leave to conduct jurisdictional discovery to discover the extent of Defendant's sales of subscriptions, advertising, goods and services to Texas residents and/or targeted at Texas residents through its Website.

CAMARA & SIBLEY LLP

/s/ Joseph D. Sibley_____
Joseph D. Sibley
State Bar No. 24047203
sibley@camarasibley.com
Camara & Sibley LLP
4400 Post Oak Pkwy.
Suite 2700
Houston, Texas 77027
Telephone: (713) 966-6789
Fax: (713) 583-1131

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed on this 2nd day of August, 2020, pursuant to the electronic filing requirements of the United States District Court for the Southern District of Texas, which provide for service on counsel of record in accordance with the electronic filing protocols in place.

*/s/ Joseph D. Sibley*
Joseph D. Sibley